**In re Charles A. STEVENS, Constance M. Stevens d/b/a Stevens Scrap Metals, Debtors.**

**Bankruptcy No. 184–00096.**

United States Bankruptcy Court, D. Maine.

Oct. 9, 1985.

Thomas O. Bither, Houlton, Me., for debtors.

Carrie Linthicum, Presque Isle, Me., Trustee.

James T. Kilbreth and Phyllis Gardiner, Asst. Attys. Gen., Augusta, Me., for the State of Me.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

On April 26, 1984, the debtors filed a voluntary bankruptcy petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maine. This dispute arises out of two proofs of claim filed by the State of Maine, Department of Environmental Protection, Maine Hazardous Waste Fund (the State of Maine). This matter is a core proceeding and the facts are undisputed.[1]

The debtors, prior to filing the bankruptcy petition, owned and operated a scrap metal business, and had in their possession drums of waste oil that were stored on a farm adjacent to the debtors' property. On June 24, 1981, the State of Maine collected samples from the drums and sent the samples to the Northeast Laboratory Services for analysis. On July 28, 1981, the State of Maine sent a copy of the bill from the Northeast Laboratory Services in an amount of $803.25, together with the results of the analysis, to the debtor, Charles A. Stevens (Stevens), and requested that he pay the bill within thirty days. On July 30, 1981, additional samples of well water and soil were taken from the debtors' property and submitted to the Northeast Laboratory Services for analysis at a cost of $476.00. On September 23, 1981, the State of Maine sent a copy of the bill to Stevens with a request that he pay the bill within thirty days. The results of the laboratory tests showed that 29 of the 52 drums of waste oil owned by the debtors and stored on the adjacent property contained traces of polychlorinated biphenyls (PCB's), a highly toxic substance. The State of Maine notified the debtors that the contaminated drums should be moved to an approved storage area. By letter dated September 29, 1981, Stevens inquired of the State of Maine as to the acceptability of storing the contaminated drums in a tractor-trailer box located on the debtors' property. Stevens was notified by the State of Maine by letter dated October 22, 1981 that a tractor-trailer box would not qualify as an approved storage facility. The State of Maine collected additional soil and water samples on December 2, 1981 and May 12, 1982 and on the latter date, discovered that the contaminated drums had been moved to the tractor-trailer box on the debtors' premises. On the date of the bankruptcy petition, the contaminated drums remained in storage in the tractor-trailer box at the debtors' place of business and as of that date, the State of Maine had incurred expenses relating to the investigation of the contaminated drums in the amount of $4,296.20.

On May 4, 1984, after the date the bankruptcy petition was filed, the State of Maine again notified Stevens that the storage of the contaminated drums in the tractor-trailer box constituted a violation of the Department of Environmental Protection's regulations and informed Stevens of the requirements for the removal of the drums. In a telephone conversation on June 5, 1984 and by letter dated June 11, 1984, the State of Maine requested that the duly appointed trustee in this bankruptcy case or the debt-

1. This memorandum of decision constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

ors arrange for the proper disposal of the contaminated drums. In a telephone conversation on June 11, 1984 and by letter dated June 12, 1984, the trustee informed the State of Maine that she would not arrange for the removal of the contaminated drums, that she had no objection to the State of Maine's removal of the drums, but that the debtors' estate would not pay for any costs incurred by the State of Maine. On June 21, 1984, Pollution Control Unlimited, a firm specializing in the removal of hazardous materials, at the direction of the State of Maine, removed the contaminated drums from the tractor-trailer box. The total cost to the State of Maine for the removal, transportation, and disposal of the contaminated drums and the supervision of the clean-up operation was $7,572.20.

With respect to the $4,296.20 incurred prior to the debtors' filing their bankruptcy petition, the State of Maine contends that it has a perfected lien on all of the debtors' assets to the extent of its expenditures in the investigation of the contaminated drums. In addition, the State of Maine asserts that it has a first priority administrative claim under 11 U.S.C. § 507(a)(1) and 11 U.S.C. § 503(b)(1)(A) in the amount of $7,572.20 for the expenses incurred in the removal, transportation, and disposal of the contaminated drums after the date of filing. The trustee objects to both claims of the State of Maine, denying that the State of Maine has a perfected lien on the debtors' assets for its pre-filing expenditures and denying that the State of Maine's post-filing expenditures should be characterized as a first priority administrative expense. The parties filed memoranda of law and the Court heard oral arguments on May 22, 1985.

■ The basis upon which the State of Maine asserts a pre-bankruptcy lien upon all of the debtors' assets, as outlined in its brief, purports to be Me.Rev.Stat.Ann. tit. 38, § 1319–J (Supp.1984–1985); Me.Rev. Stat.Ann. tit. 38, § 1306–C (Supp.1984– 1985); and Me.Rev.Stat.Ann. tit. 38, § 1370 (Supp.1984–1985). The State of Maine argues that Maine law imposes a strict liabili-

ty upon "[a]ny person who permits, causes or is responsible for a discharge or threatened discharge of hazardous waste...." Me.Rev.Stat.Ann. tit. 38, § 1319–J (Supp. 1984–1985). Me.Rev.Stat.Ann. tit. 38, § 1306–C (Supp.1984–1985), entitled "Forfeiture; civil liability," states:

**1. Property forfeited.** The following property shall be subject to forfeiture to the State and all property rights therein shall be in the State:

**A.** All conveyances which are used or intended for use in handling or transporting hazardous waste in violation of this subchapter and all materials, products and equipment used or intended for use in such handling or transportation or handled or transported shall be subject to forfeiture to the State; and

**B.** All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in any transaction involving a hazardous waste in violation of this subchapter, all proceeds traceable to such a transaction and all moneys, negotiable instruments, securities or other things of value used or intended to be used to facilitate any violation of this subchapter.

**2. Jurisdiction.** Property subject to forfeiture may be declared forfeited by a court having jurisdiction over the property or having final jurisdiction over a related civil or criminal proceeding under this subchapter.

**3. Exceptions.** The court may order forfeiture of all property subject to forfeiture, except as follows.

**A.** No conveyance used by a common carrier in the transaction of business as a common carrier may be forfeited, unless it appears that the owner or other person in charge of the conveyance was a consenting party or privy to a violation of this subchapter.

**B.** No conveyance may be forfeited by reason of an act or ommission established by the owner to have been committed or omitted by another per-

son while the conveyance was unlawfully in the possession of another person in violation of the criminal laws of the United States or of any state.

C. No conveyance may be subject to forfeiture unless the owner knew or should have known that the conveyance was used in and for the handling of hazardous waste in violation of this subchapter. Proof that the conveyance was used on 3 or more occasions for the purpose of handling hazardous waste in violation of this subchapter shall be prima facie evidence that the owner knew thereof or should have known thereof.

D. No property subject to forfeiture under subsection 1, paragraph B may be forfeited, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

4. **Procedure.** The Attorney General may seek forfeiture of a conveyance according to the procedure set forth in Title 22, section 2387, subsections 4, 5 and 6 with the following exceptions.

A. A final order issued by the court under that procedure shall provide for disposition of the conveyance by the Department of Finance and Administration, including official use by a public agency or sale at public auction or by competitive bidding.

*Text of paragraph B of subsection 4 effective until March 1, 1985*

B. The proceeds of a sale shall be used to pay the reasonable expenses for the forfeiture proceedings, seizure, storage, maintenance of custody, advertising and notice, and to pay any bona fide mortgage thereon, and the balance, if any, shall be deposited in the General Fund.

*Text of paragraph B of subsection 4 effective March 1, 1985*

B. The proceeds of a sale shall be used to pay the costs of clean-up, abatement or mitigation of any threats or hazards to public health or safety or to the environment, the costs of any removal, storage, treatment, disposal or other handling of hazardous waste or hazardous substances, as defined in section 1362, reasonable expenses for the forfeiture proceedings, seizure, storage, maintenance of custody, advertising and notice, and to pay any bona fide mortgage thereon, and the balance, if any, shall be deposited in the General Fund.

C. Records, required by Title 22, section 2387, subsection 5, shall be open to inspection by all federal and state officers charged with enforcement of federal and state laws relating to the handling of hazardous waste.

5. **Civil liability.** A person who disposes of hazardous waste, when that disposal, in fact, endangers the health, safety or welfare of another, is liable in a civil suit for all resulting damages. It is not necessary to prove negligence.

For the purposes of this section, damages shall be limited to damages to real estate or personal property or loss of income directly or indirectly as a result of a disposal of hazardous wastes. Damages awarded may be mitigated if the disposal is the result of an act of war or an act of God.

Nothing in this section shall preclude any action for damages which may be maintained under the common law or the laws of this State.

Me.Rev.Stat.Ann. tit. 38, § 1306–C (Supp. 1984–1985).

Me.Rev.Stat.Ann. tit. 38, § 1370 (Supp. 1984–1985) states:

The following property shall be subject to forfeiture to the State in accordance with the procedures set forth in section 1306–C and all property rights therein shall be in the State:

1. **Real Estate.** All real estate, structures, appurtenances, improvements, equipment, machinery, containers, tanks, conveyances, products, materials and supplies used directly or in-

tended to be used directly in violation of any provision of this chapter; and

**2. Moneys.** All moneys, negotiable instruments, securities or other things of value furnished or intended to be furnished by any person in any transaction, and all proceeds traceable to such a transaction, intended to be used directly in violation of any provision of this chapter.

Me.Rev.Stat.Ann. tit. 38, § 1370 (Supp. 1984–1985).

The State of Maine in this case has admitted in oral argument that there is no express lien under Maine law, but maintains that this Court should find a "constructive statutory lien." The apparent theory of the State of Maine is that since Me.Rev. Stat.Ann. tit. 38, § 1306–C (Supp.1984–1985) and Me.Rev.Stat.Ann. tit. 38, § 1370 (Supp.1984–1985) outline procedures for forfeiture and civil liability, this Court can, in the absence of the State of Maine following those procedures, impose a constructive lien. This Court disagrees. The Court finds that it was the intention of the Maine legislature that the State proceed with respect to forfeitures within the strict confines of Me.Rev.Stat.Ann. tit. 38, § 1306–C (Supp.1984–1985). The facts as submitted to the Court do not indicate any evidence whatsoever that the State of Maine initiated any of these statutory procedures. The Court knows of no legal theory upon which it could find, as the State of Maine argues, a "constructive statutory lien." The State of Maine's claim in the amount of $4,296.20 shall be allowed as a general, unsecured claim against the debtors' estate.

The second issue in this case is whether the State of Maine has a first priority administrative claim under 11 U.S.C. § 507(a)(1) and 11 U.S.C. § 503(b)(1)(A) to the extent of the expenses incurred after the filing of the bankruptcy petition for the removal, transportation, and disposal of the contaminated drums and the supervision of the clean-up operation. The State of Maine contends that the expenses incurred were "the actual, necessary costs and expenses of preserving the [debtors'] estate" under 11 U.S.C. § 503(b)(1)(A) and argues that because the trustee cannot abandon the hazardous waste in violation of 28 U.S.C. § 959(b), the State's cost to clean-up the hazardous waste on behalf of the trustee is an administrative expense. In support of its position, the State of Maine cites *In re Quanta Resources Corp.*, 739 F.2d 912 (3rd Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 1168, 84 L.Ed.2d 319 (1985), where "the court refused to allow the trustee to abandon a storage facility containing PCB-contaminated waste oil on the ground that such an abandonment would constitute disposal of hazardous waste in violation of state and local law" and held that if the trustee cannot abandon the property, the trustee must pay to remove the contaminated drums. Brief for State of Maine at ——. *See also In re T.P. Long Chemical, Inc.*, 45 B.R. 278 (Bankr.N.D.Ohio 1985).

This Court disagrees with the decisions in *Quanta Resources Corp.* and *T.P. Long Chemical, Inc.*, and is satisfied that a trustee may abandon hazardous waste under 11 U.S.C. § 554(a); that the cost of an environmental clean-up inherited by a trustee is not an administrative expense under 11 U.S.C. § 503(b)(1)(A); and that the claim for $7,572.20 is a pre-filing claim for which the State of Maine is entitled to the same treatment as other general, unsecured creditors.

Section 554(a) provides that the court may authorize a trustee to abandon property of the debtor's estate that is burdensome or is of inconsequential value to the estate. Section 554(a) codified the previous case law under the Bankruptcy Act of 1898 which "permitted the trustee to abandon property that was worthless or overburdened, or for any reason when it was certain that the property would not yield any benefit to the general estate." 4 *Collier on Bankruptcy* ¶ 554.01 (15th Ed. 1985). This section does not provide any exception to abandonment by the trustee of hazardous waste. Moreover, this Court does not consider the trustee's authority to abandon under 11 U.S.C. § 554(a) to be

qualified by 28 U.S.C. § 959(b). Section 959(b) of Title 28 provides only that a trustee must "manage and operate the property in his possession ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." In refusing to clean-up the hazardous waste herself, the trustee in this case was neither managing nor operating the property, but was merely refusing to administer property because the administration of that property would be burdensome to the debtors' estate.

■ It is difficult to conceive how a trustee in a Chapter 7 case could be either prohibited from abandoning property under 11 U.S.C. § 554(a) or, in the alternative, ordered to comply with 28 U.S.C. § 959(b) when the ability to do so depends upon the assets available in the debtor's estate. The trustee's obligations in a Chapter 7 case are necessarily reduced by the nature of his office into monetary obligations and those monetary obligations are confined to what may be allowed as an administrative expense. The Court shall allow as an administrative expense

> the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]

11 U.S.C. § 503(b)(1)(A).

In this case, the Court is guided by the long-standing principles of economy and benefit to the estate in determining whether the claim of the State of Maine should be allowed as an administrative expense under 11 U.S.C. § 503(b)(1)(A). The State of Maine's claim can be characterized as an administrative expense only if the expenses incurred "did in fact confer *actual* value on the [debtors'] estate as a whole." *In re*

*O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 121 (Bankr.S.D.N.Y. 1982) (emphasis added); *see also In re Rhymes, Inc.,* 14 B.R. 807 (Bankr.D.Conn.1981). The Court fails to see any actual value to the debtors' estate and its creditors as a result of the post-petition expenditures incurred by the State of Maine. There is no indication whatsoever that Congress intended that the "actual [and] necessary" language found within the Bankruptcy Act of 1898 or the Bankruptcy Code of 1978, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, to mean that a debtor's estate could be preserved by completely depleting the estate of its assets.[2]

This Court is further persuaded by the United States Supreme Court's decision in *Ohio v. Kovacs, d/b/a B & W Enterprises, et. al.,* — U.S. ——, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) that the claim, in fact, is a claim that was due and owing the State of Maine by the debtors on the date of filing the bankruptcy petition. Although the *Kovacs* case addressed the issue of the dischargeability of a monetary obligation imposed upon a debtor under an environmental clean-up order issued by a state court prior to the filing of the bankruptcy petition, the Supreme Court first had to determine that the obligation existed on the date the bankruptcy petition was filed and was a claim against the debtor's estate within the meaning of 11 U.S.C. § 101(4). This Court finds that the State of Maine had a claim against the debtors' estate in the amount of $7,572.20 as of the date the bankruptcy petition was filed. Section 101(4) of the Bankruptcy Code provides that a "claim" is a

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, dis-

---

**2.** This case is a Chapter 7 case and the trustee's administration of the debtors' property is substantially different from the facts in an operating Chapter 11 case recently decided by the First Circuit Court of Appeals where the Court allowed a civil, compensatory fine for violating an injunction as an administrative expense be-

cause the Court found that the debtor *"deliberately* continued a violation of law month after month presumably because it was more lucrative for the business to operate outside [a] zoning ordinance than within it." *In re Charlesbank Laundry, Inc.,* 755 F.2d 200, 202–203 (1985) (emphasis original).

puted, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(4).

Under the definition of a "claim," it is "contemplate[d] that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case[;] [i]t permits the broadest possible relief in the bankruptcy court." H.R. 95–595, 95th Cong., 1st Sess. 309 (1977); S. 95–989, 95th Cong., 2d Sess. 21 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5807, 6266. Under Maine law, "[a]ny person who permits, causes or is responsible for a discharge or threatened discharge of hazardous waste *shall* reimburse the State for all costs incurred, including personnel costs, in the removal of the discharge or threatened discharge." Me.Rev.Stat.Ann. tit. 38, § 1319–J (Supp. 1984–1985) (emphasis added). It is the right of the State of Maine to reimbursement, as provided by state statute, that gives rise to the claim. The fact that as of the date of filing of the bankruptcy petition the hazardous waste had not yet been removed from the debtors' property does not affect the underlying right to reimbursement prescribed by the statute and the claim arising thereby.

This Court does not view the facts of this case as inapposite to the Supreme Court's reasoning in *Kovacs*. In the *Kovacs* case, the Supreme Court focused on the State's available remedy on the date of bankruptcy under such circumstances where there was an injunctive order and a receiver appointed prior to bankruptcy. The Supreme Court concluded in its reasoning that the duty of the debtor had been reduced to a monetary obligation. In this case, the debtors on the date of bankruptcy were dispossessed of their authority over the property as Kovacs was on the appoint-

ment of the receiver. No other remedy remained for the State of Maine against the debtors other than the debtors' liability for the costs of the clean-up. The debtors' liability on the monetary obligation owed to the State of Maine is a pre-filing bankruptcy claim and cannot be given the elevated status of an administrative expense.

The State of Maine's claim in the amount of $7,572.20 shall be allowed as a general, unsecured claim against the debtors' estate.

Enter Order.