OHIO *v.* KOVACS, DBA B & W ENTERPRISES ET AL.

No. 83-1020.   Argued October 10, 1984—Decided January 9, 1985

WHITE, J., delivered the opinion for a unanimous Court. O'CONNOR, J., filed a concurring opinion, *post*, p. 285.

*E. Dennis Muchnicki*, Assistant Attorney General of Ohio, argued the cause for petitioner. With him on the briefs was *Anthony J. Celebrezze, Jr.*, Attorney General.

*Kathryn A. Oberly* argued the cause for the United States as *amicus curiae* urging reversal. With her on the brief were *Solicitor General Lee, Assistant Attorney General Habicht, Deputy Solicitor General Claiborne, Peter R. Steenland, Jr.*, and *Dirk D. Snel*.

*David A. Caldwell* argued the cause and filed a brief for respondent.*

JUSTICE WHITE delivered the opinion of the Court.

Petitioner State of Ohio obtained an injunction ordering respondent William Kovacs to clean up a hazardous waste site. A receiver was subsequently appointed. Still later, Kovacs filed a petition for bankruptcy. The question before us is whether, in the circumstances present here, Kovacs' obligation under the injunction is a "debt" or "liability on a claim" subject to discharge under the Bankruptcy Code.

---

*Briefs of *amici curiae* urging reversal were filed for the Commonwealth of Pennsylvania et al. by *Leroy S. Zimmerman*, Attorney General, *Howard J. Wein*, and *James D. Morris;* and for the Council of State Governments et al. by *Lawrence R. Velvel*.

## I

Kovacs was the chief executive officer and stockholder of Chem-Dyne Corp., which with other business entities operated an industrial and hazardous waste disposal site in Hamilton, Ohio. In 1976, the State sued Kovacs and the business entities in state court for polluting public waters, maintaining a nuisance, and causing fish kills, all in violation of state environmental laws. In 1979, both in his individual capacity and on behalf of Chem-Dyne, Kovacs signed a stipulation and judgment entry settling the lawsuit. Among other things, the stipulation enjoined the defendants from causing further pollution of the air or public waters, forbade bringing additional industrial wastes onto the site, required the defendants to remove specified wastes from the property, and ordered the payment of $75,000 to compensate the State for injury to wildlife.

Kovacs and the other defendants failed to comply with their obligations under the injunction. The State then obtained the appointment in state court of a receiver, who was directed to take possession of all property and other assets of Kovacs and the corporate defendants and to implement the judgment entry by cleaning up the Chem-Dyne site. The receiver took possession of the site but had not completed his tasks when Kovacs filed a personal bankruptcy petition.[1]

Seeking to develop a basis for requiring part of Kovacs' postbankruptcy income to be applied to the unfinished task of the receivership, the State then filed a motion in state court to discover Kovacs' current income and assets. Kovacs requested that the Bankruptcy Court stay those proceedings, which it did.[2] The State also filed a complaint in the Bank-

---

[1] Kovacs originally filed a reorganization petition under Chapter 11 of the Bankruptcy Code, 11 U. S. C. § 1101 *et seq.*, but converted the petition to a liquidation bankruptcy under Chapter 7. See 11 U. S. C. § 1112.

[2] The Bankruptcy Court held that the requested hearing was an effort to collect money from Kovacs in violation of the automatic stay provision. See 11 U. S. C. § 362. It entered a specific stay as well. The District

ruptcy Court seeking a declaration that Kovacs' obligation under the stipulation and judgment order to clean up the Chem-Dyne site was not dischargeable in bankruptcy because it was not a "debt," a liability on a "claim," within the meaning of the Bankruptcy Code. In addition, the complaint sought an injunction against the bankruptcy trustee to restrain him from pursuing any action to recover assets of Kovacs in the hands of the receiver. The Bankruptcy Court ruled against Ohio, *In re Kovacs*, 29 B. R. 816 (SD Ohio 1982), as did the District Court. The Court of Appeals for the Sixth Circuit affirmed, holding that Ohio essentially sought from Kovacs only a monetary payment and that such a required payment was a liability on a claim that was dischargeable under the bankruptcy statute. *In re Kovacs*, 717 F. 2d 984 (1983). We granted certiorari to determine the dischargeability of Kovacs' obligation under the affirmative injunction entered against him. 465 U. S. 1078 (1984).

## II

Kovacs alleges that the Army Corps of Engineers, using funds recovered from those concerns that generated the wastes, has removed all industrial wastes from the site and that if he has an obligation to pay those expenses, the obligation is owed to the United States, not the State. Kovacs urges that the case is therefore moot. The State argues that the case is not moot because the removal of the barrels and

Court affirmed, ruling that Ohio was trying to enforce a judgment obtained before filing of the bankruptcy petition. The Court of Appeals for the Sixth Circuit also found the hearing barred. *In re Kovacs*, 681 F. 2d 454 (1982). In that court's view, while § 362(b) allowed governmental units to continue to enforce police powers through mandatory injunctions, it denied them the power to collect money in their enforcement efforts. Because of the later filing by Ohio of a complaint to declare that Kovacs' obligations were not claims under bankruptcy, we granted certiorari, vacated the judgment of the Court of Appeals, and remanded to that court to consider whether the dispute over the stay was moot. 459 U. S. 1167 (1983). As far as we are advised, the Court of Appeals has taken no action on the remand.

wastes from the surface did not satisfy all of Kovacs' obligations to clean up the site; it is said that the ground itself remains permeated with toxic materials that must be removed if further pollution of the public waters is to be avoided. We perceive nothing feigned or frivolous about the State's submission. *Sibron* v. *New York*, 392 U. S. 40, 57 (1968). The State surely has a stake in the outcome of this case, *United States Parole Comm'n* v. *Geraghty*, 445 U. S. 388, 397 (1980), which in our view is not moot. We proceed to the merits.

### III

Except for the nine kinds of debts saved from discharge by 11 U. S. C. § 523(a), a discharge in bankruptcy discharges the debtor from all debts that arose before bankruptcy. § 727(b). It is not claimed here that Kovacs' obligation under the injunction fell within any of the categories of debts excepted from discharge by § 523. Rather, the State submits that the obligation to clean up the Chem-Dyne site is not a debt at all within the meaning of the bankruptcy law.

For bankruptcy purposes, a debt is a liability on a claim. § 101(11). A claim is defined by § 101(4) as follows:

"(4) 'claim' means—

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

"(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."

The provision at issue here is § 101(4)(B). For the purposes of that section, there is little doubt that the State had the right to an equitable remedy under state law and that the

right has been reduced to judgment in the form of an injunction ordering the cleanup. The State argues, however, that the injunction it has secured is not a claim against Kovacs for bankruptcy purposes because (1) Kovacs' default was a breach of the statute, not a breach of an ordinary commercial contract which concededly would give rise to a claim; and (2) Kovacs' breach of his obligation under the injunction did not give rise to a right to payment within the meaning of § 101(4)(B). We are not persuaded by either submission.

There is no indication in the language of the statute that the right to performance cannot be a claim unless it arises from a contractual arrangement. The State resorted to the courts to enforce its environmental laws against Kovacs and secured a negative order to cease polluting, an affirmative order to clean up the site, and an order to pay a sum of money to recompense the State for damage done to the fish population. Each order was one to remedy an alleged breach of Ohio law; and if Kovacs' obligation to pay $75,000 to the State is a debt dischargeable in bankruptcy, which the State freely concedes, it makes little sense to assert that because the cleanup order was entered to remedy a statutory violation, it cannot likewise constitute a claim for bankruptcy purposes. Furthermore, it is apparent that Congress desired a broad definition of a "claim"[3] and knew how to limit the application of a provision to contracts when it desired to do so.[4] Other provisions cited by Ohio refute, rather than support, its strained interpretation.[5]

---

[3] H. R. Rep. No. 95–595, p. 309 (1977); S. Rep. No. 95–989, p. 21 (1978). See 2 R. Levin & K. Klee, Collier on Bankruptcy ¶ 101–.04, p. 101–16.4 (15th ed. 1984).

[4] See 11 U. S. C. § 365 (assumption or rejection of executory contracts and leases).

[5] Congress created exemptions from discharge for claims involving penalties and forfeitures owed to a governmental unit, 11 U. S. C. § 523(a)(7), and for claims involving embezzlement and larceny. § 523(a)(4). If a bankruptcy debtor has committed larceny or embezzlement, giving rise to

The courts below also found little substance in the submission that the cleanup obligation did not give rise to a right to payment that renders the order dischargeable under § 727. The definition of "claim" in H. R. 8200 as originally drafted would have deemed a right to an equitable remedy for breach of performance a claim even if it did not give rise to a right to payment.[6] The initial Senate definition of claim was narrower,[7] and a compromise version, § 101(4), was finally adopted. In that version, the key phrases "equitable remedy," "breach of performance," and "right to payment" are not defined. See 11 U. S. C. § 101. Nor are the differences between the successive versions explained. The legislative history offers only a statement by the sponsors of the Bankruptcy Reform Act with respect to the scope of the provision:

> "Section 101(4)(B) . . . is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. For example, in some States, a judgment for specific performance may be satisfied by an alternative right to payment in the event performance is refused; in that event, the creditor entitled to specific performance would have a 'claim' for purposes of a proceeding under title 11."[8]

We think the rulings of the courts below were wholly consistent with the statute and its legislative history, sparse as it is. The Bankruptcy Court ruled as follows, *In re Kovacs*, 29 B. R., at 818:

---

a remedy of either damages or equitable restitution under state law, the resulting liability for breach of an obligation created by law is clearly a claim which is nondischargeable in bankruptcy.

[6] H. R. 8200, 95th Cong., 1st Sess., 309–310 (House Committee print 1977), as reported September 8, 1977.

[7] See S. 2266, 95th Cong., 1st Sess., 299 (1977), as introduced October 31, 1977.

[8] 124 Cong. Rec. 32393 (1978) (remarks of Rep. Edwards); see also *id.*, at 33992 (remarks of Sen. DeConcini).

"There is no suggestion by plaintiff that defendant can render performance under the affirmative obligation other than by the payment of money. We therefore conclude that plaintiff has a claim against defendant within the meaning of 11 U. S. C. § 101(4), and that defendant owes plaintiff a debt within the meaning of 11 U. S. C. § 101(11). Furthermore, we have concluded that that debt is dischargeable." [9]

The District Court affirmed, primarily because it was bound by and saw no error in the Court of Appeals' prior opinion holding that the State was seeking no more than a money judgment as an alternative to requiring Kovacs personally to perform the obligations imposed by the injunction. To hold otherwise, the District Court explained, "would subvert

---

[9] More fully stated, the Bankruptcy Court's observations were:

"What is at stake in the present motion is whether defendant's bankruptcy will discharge the affirmative obligation imposed upon him by the Judgment Entry, that he remove and dispose of all industrial and/or other wastes at the subject premises. If plaintiff is successful here, it would be able to levy on defendant's wages, the action prevented by our Prior Decision, after defendant's bankruptcy case is closed and/or the stay of 11 U. S. C. § 362 as interpreted by our Prior Decision is no longer in force. The parties have crystallized the issue here in simple fashion, plaintiff stoutly insisting that the just identified affirmative obligation is not a monetary obligation, while defendant says that it is. The problem arises, of course, because it is not stated as a monetary obligation. Essentially for this reason plaintiff argues that it is not a monetary obligation. Yet plaintiff in discussing the background for the Judgment Entry says that it expected that defendant would generate sufficient funds in his ongoing business to pay for the clean-up. Moreover, we take judicial notice that plaintiff sought discovery with respect to defendant's earnings, the matter dealt with in our Prior Decision, for the purpose of levying upon his wages, a technique which has no application other than in the enforcement of a money judgment. There is no suggestion by plaintiff that defendant can render performance under the affirmative obligation other than by the payment of money. We therefore conclude that plaintiff has a claim against defendant within the meaning of 11 U. S. C. § 101(4), and that defendant owes plaintiff a debt within the meaning of 11 U. S. C. § 101(11). Furthermore, we have concluded that that debt is dischargeable." 29 B. R., at 818.

Congress' clear intention to give debtors a fresh start."
App. JA–16. The Court of Appeals also affirmed, rejecting
the State's insistence that it had no right to, and was not
attempting to enforce, an alternative right to payment:

> "Ohio does not suggest that Kovacs is capable of person-
> ally cleaning up the environmental damage he may have
> caused. Ohio claims there is no alternative right to pay-
> ment, but when Kovacs failed to perform, state law gave
> a state receiver total control over all Kovacs' assets.
> Ohio later used state law to try and discover Kovacs'
> post-petition income and employment status in an appar-
> ent attempt to levy on his future earnings. In reality,
> the only type of performance in which Ohio is now inter-
> ested is a money payment to effectuate the Chem-Dyne
> cleanup.

> .  .  .  .  .

> "The impact of its attempt to realize upon Kovacs' in-
> come or property cannot be concealed by legerdemain or
> linguistic gymnastics. Kovacs cannot personally clean
> up the waste he wrongfully released into Ohio waters.
> He cannot perform the affirmative obligations properly
> imposed upon him by the State court except by paying
> money or transferring over his own financial resources.
> The State of Ohio has acknowledged this by its steadfast
> pursuit of payment as an alternative to personal per-
> formance." 717 F. 2d, at 987–988.

As we understand it, the Court of Appeals held that, in the
circumstances, the cleanup duty had been reduced to a
monetary obligation.

We do not disturb this judgment. The injunction surely
obliged Kovacs to clean up the site. But when he failed to do
so, rather than prosecute Kovacs under the environmental
laws or bring civil or criminal contempt proceedings, the
State secured the appointment of a receiver, who was or-
dered to take possession of all of Kovacs' nonexempt assets as

well as the assets of the corporate defendants and to comply with the injunction entered against Kovacs.   As wise as this course may have been, it dispossessed Kovacs, removed his authority over the site, and divested him of assets that might have been used by him to clean up the property.   Furthermore, when the bankruptcy trustee sought to recover Kovacs' assets from the receiver, the latter sought an injunction against such action.   Although Kovacs had been ordered to "cooperate" with the receiver, he was disabled by the receivership from personally taking charge of and carrying out the removal of wastes from the property.   What the receiver wanted from Kovacs after bankruptcy was the money to defray cleanup costs.   At oral argument in this Court, the State's counsel conceded that after the receiver was appointed, the only performance sought from Kovacs was the payment of money.   Tr. of Oral Arg. 19–20.   Had Kovacs furnished the necessary funds, either before or after bankruptcy, there seems little doubt that the receiver and the State would have been satisfied.   On the facts before it, and with the receiver in control of the site,[10] we cannot fault the Court of Appeals for concluding that the cleanup order had been converted into an obligation to pay money, an obligation that was dischargeable in bankruptcy.[11]

---

[10] We were advised at oral argument that the receiver at that time was still in possession of the site, although he was contemplating terminating the receivership.   Tr. of Oral Arg. 4, 56–57.   We were also advised that it was difficult to tell exactly who owned the property at 500 Ford Boulevard and that although the trustee did not formally abandon the property, he did not seek to take possession of it.   *Id.*, at 55, 58.

[11] The State relies on *Penn Terra, Ltd.* v. *Department of Environmental Resources*, 733 F. 2d 267 (CA3 1984).   There, the Court of Appeals for the Third Circuit held that the automatic stay provision of 11 U. S. C. § 362 did not apply to the State's seeking an injunction against a bankrupt to require compliance with the environmental laws.   This was held to be an effort to enforce the police power statutes of the State, not a suit to enforce a money judgment.   But in that case, there had been no appointment of a receiver who had the duty to comply with the state law and who was seeking money from the bankrupt.   The automatic stay provision does not apply to suits

## IV

It is well to emphasize what we have not decided. First, we do not suggest that Kovacs' discharge will shield him from prosecution for having violated the environmental laws of Ohio or for criminal contempt for not performing his obligations under the injunction prior to bankruptcy. Second, had a fine or monetary penalty for violation of state law been imposed on Kovacs prior to bankruptcy, § 523(a)(7) forecloses any suggestion that his obligation to pay the fine or penalty would be discharged in bankruptcy. Third, we do not address what the legal consequences would have been had Kovacs taken bankruptcy before a receiver had been appointed and a trustee had been designated with the usual duties of a bankruptcy trustee.[12] Fourth, we do not hold

---

to enforce the regulatory statutes of the State, but the enforcement of such a judgment by seeking money from the bankrupt—what the Court of Appeals for the Sixth Circuit concluded was involved in this case—is another matter.

[12] The commencement of a case under the Bankruptcy Code creates an estate which, with limited exceptions, consists of all of the debtor's property wherever located. 11 U. S. C. § 541. The trustee, who is to be appointed promptly in Chapter 7 cases, is charged with the duty of collecting and reducing the property of the estate and is to be accountable for all of such property. 11 U. S. C. § 704. A custodian of the debtor's property appointed before commencement of the case is required to deliver the debtor's property in his custody to the trustee, unless the bankruptcy court concludes that the interest of creditors would be better served by permitting the custodian to continue in possession and control of the property. 11 U. S. C. § 543. After notice and hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate. 11 U. S. C. § 554. Such abandonment is to the person having the possessory interest in the property. S. Rep. No. 95–989, p. 92 (1978). Property that is scheduled but not administered is deemed abandoned. 11 U. S. C. § 554(c). Had no receiver been appointed prior to Kovacs' bankruptcy, the trustee would have been charged with the duty of collecting Kovacs' nonexempt property and administering it. If the site at issue were Kovacs' property, the trustee would shortly determine whether it was of value to the estate. If the property was worth more than the costs of bringing it into compliance with state law, the

that the injunction against bringing further toxic wastes on the premises or against any conduct that will contribute to the pollution of the site or the State's waters is dischargeable in bankruptcy; we here address, as did the Court of Appeals, only the affirmative duty to clean up the site and the duty to pay money to that end. Finally, we do not question that anyone in possession of the site—whether it is Kovacs or another in the event the receivership is liquidated and the trustee abandons the property, or a vendee from the receiver or the bankruptcy trustee—must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions. As the case comes to us, however, Kovacs has been dispossessed and the State seeks to enforce his cleanup obligation by a money judgment.

The judgment of the Court of Appeals is

*Affirmed.*

JUSTICE O'CONNOR, concurring.

I join the Court's opinion and agree with its holding that the cleanup order has been reduced to a monetary obligation dischargeable as a "claim" under § 727 of the Bankruptcy Code. I write separately to address the petitioner's concern that the Court's action will impede States in enforcing their environmental laws.

To say that Kovacs' obligation in these circumstances is a claim dischargeable in bankruptcy does not wholly excuse the obligation or leave the State without any recourse against Kovacs' assets to enforce the order. Because "Congress has

---

trustee would undoubtedly sell it for its net value, and the buyer would clean up the property, in which event whatever obligation Kovacs might have had to clean up the property would have been satisfied. If the property were worth less than the cost of cleanup, the trustee would likely abandon it to its prior owner, who would have to comply with the state environmental law to the extent of his or its ability.

generally left the determination of property rights in the assets of a bankrupt's estate to state law," *Butner* v. *United States*, 440 U. S. 48, 54 (1979), the classification of Ohio's interest as either a lien on the property itself, a perfected security interest, or merely an unsecured claim depends on Ohio law. That classification—a question not before us—generally determines the priority of the State's claim to the assets of the estate relative to other creditors. Cf. 11 U. S. C. § 545 (trustee may avoid statutory liens only in specified circumstances). Thus, a State may protect its interest in the enforcement of its environmental laws by giving cleanup judgments the status of statutory liens or secured claims.

The Court's holding that the cleanup order was a "claim" within the meaning of § 101(4) also avoids potentially adverse consequences for a State's enforcement of its order when the debtor is a corporation, rather than an individual. In a Chapter 7 proceeding under the Bankruptcy Code, a corporate debtor transfers its property to a trustee for distribution among the creditors who hold cognizable claims, and then generally dissolves under state law. Because the corporation usually ceases to exist, it has no postbankruptcy earnings that could be utilized by the State to fulfill the cleanup order. The State's only recourse in such a situation may well be its "claim" to the prebankruptcy assets.

For both these reasons, the Court's holding today cannot be viewed as hostile to state enforcement of environmental laws.