**In re Garland D. ROBINSON, d/b/a Robinson Motors, Debtor.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Garland D. ROBINSON, Defendant.**

**Bankruptcy No. 84–404–BK–J–GP.**

**Adv. No. 84–174.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Feb. 4, 1985.

---

David E. Dearing, Washington, D.C., Brian Gerber, U.S. Army Corps of Engineers, Jacksonville, Fla., for plaintiff.

Robert L. Busch, Jacksonville, Fla., for defendant.

GEORGE L. PROCTOR, Bankruptcy Judge.

This matter was heard on cross motions for summary judgment on the issue of the dischargeability of the affirmative duty, created by a valid United States District Court judgment, to restore certain marshland to an approximation of its condition before the defendant unlawfully excavated and filled it. It is undisputed that the debtor/defendant violated 33 U.S.C. §§ 403 and 1311, respectively provisions of the River and Harbor Act and the Clean Water Act.

The material facts are as follows:

In 1978, the defendant owned three parcels of land on Trout River in Duval County, Florida. Acting without the required permit, and thus in violation of the statutes cited above, the defendant at various times during 1978 through 1980 excavated and placed fill material on two of the lots, transforming salt marsh into an upland area and destroying the marsh vegetation, predominantly black needlerush. The defendant further violated the above-cited statutes by placing a concrete patio and a trailer on the filled area without a permit. The defendant at all times had actual knowledge that his actions were unlawful.

In April of 1980, the United States filed a civil action against the defendant. His brother, Bradley Robinson, was added as a defendant when the United States learned that Garland Robinson had conveyed a warranty deed for all of the disputed property to him. During the pendency of the litigation, Bradley Robinson reconveyed to Garland. On August 26, 1983, a final judgment was entered against both brothers; 570 F.Supp. 1157; Garland Robinson was required by its terms to remove the fill material, replant the area with marsh plants, and to bear one half of the cost of removing the patio and trailer (which had been placed on the property during the period in which Bradley Robinson was title owner and for whose removal the district court found Bradley Robinson one-half responsible). The deadline for compliance by the defendant was set at January 1, 1984. It is undisputed that the defendant has not complied. He filed for protection under

Chapter 7 of Title 11 of the United States Code on May 18, 1985.

The plaintiff argues, *inter alia*, that the obligation to restore the marsh is not dischargeable because, while the automatic stay bars governmental units from executing on ordinary money judgments, 11 U.S.C. § 362(b)(5), it does not otherwise prevent the exercise of police and regulatory powers. However valid the plaintiff's statement of the law concerning the automatic stay may be, it is not applicable to an adversary complaint alleging non-dischargeability of a debt. There is certainly little correlation between what is and is not within the scope of the automatic stay on the one hand and what is and is not dischargeable on the other. Indeed, most debts which the Court ultimately finds not to be dischargeable are nonetheless within the scope of the automatic stay.

The only statute which sets forth certain debts which are not dischargeable is 11 U.S.C. § 523. The plaintiff does not argue for the applicability of that statute, but rather urges that the obligation of the defendant to perform the restoration ordered by the district court is not a "claim" within the meaning of § 101(4) of the Code and is thus outside the scope of the discharge even though it does not fit into one of the categories set out in § 523. (It was perhaps in order to behave consistently with this position that the United States did not file a proof of claim in the bankruptcy case. It is not of importance for this ruling but we believe that a proof of claim could have been filed conditionally and without a waiver of the plaintiff's argument that no claim is involved.) Rather than being a claim within the contemplation of the Bankruptcy Code, argues the plaintiff, that which is owed by the defendant is a "remedial duty" which cannot be affected by the discharge. The Code, at § 101(4), defines a claim, as

(A) right to payment, whether or not such payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

(A debt under § 101(11) is a "liability on a claim.")

Obviously, Congress intended a broadly inclusive definition of "claim." While an argument can be made that what the defendant has owed the government is less an equitable remedy for a breach of performance than a duty to perform, it is readily capable of being reduced to a monetary debt and must be determined by the rationale which guides the very recent *Ohio v. Kovacs*, —— U.S. ——, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). In that case the United States Supreme Court unanimously determined that a facially non-monetary obligation to perform and clean up a site which the debtor had polluted was indeed a dischargeable debt. The legal points on which the *Kovacs* decision rest are couched in relatively broad terms. The Court determined Ohio had within the meaning of § 101(4)(B), the right to an equitable remedy under state law and that the right had been reduced to judgment in the form of an injunction ordering a cleanup. The Court rejected Ohio's argument that the breach of a statute, as opposed to breach of a commercial contract, does not give rise to a claim, holding that is no statutory basis for such an argument. Ohio also argued that the injunction did not give rise to a right to payment but rather a right to performance of its terms by Kovacs which argument the Court also rejected. The plaintiff seeks to distinguish the case before us from *Kovaks* in that the Court's decision appears to have been based in part on the factual determinations reached in the trial court and upheld by the Court of Appeals that Kovaks was unable to himself perform the cleanup on the basis of the court-created receivership, i.e. that he had been dispossessed. The Supreme Court accepted the lower court factual determination that the obligation had been

effectively reduced to a money judgment. In the instant case, we cannot find that the defendant has been personally barred from the site or rendered less able by government action to perform the restoration than would otherwise have been. The plaintiff does not, however, argue the proposition that the debtor would be able to perform the obligation through his own labor and without expense to the estate. Even if we were to assume that the debtor had, or could readily acquire, the expertise and equipment necessary to remove the fill and replant the marsh, it would still be necessary for him to purchase the plant stock necessary to effect the restoration. In the absence of any evidence or argument to the contrary, we must conclude that compliance with the Court's order costs money. Because we do not have before us a case in which a receiver or similar entity has entered the scenario, we must either extend the reasoning contained in *Kovacs* or hold that it is materially distinguishable from the case before us. We have concluded that extension will allow greater fidelity to the principles expressed by the Supreme Court as we understand them, than would finding the factual difference to require a legal distinction. We do not know from the record whether the plaintiff would be satisfied by the tender by the defendant of the money necessary to perform the restoration, but we do know that the restoration cannot be performed without the expenditure of money. The expenditure required could undoubtedly be reduced to a sum certain through acceptance of a bid by a qualified nurseryman. Thus while the defendant is in no less a position than he has ever been to perform the obligation, and we cannot find the *de facto* money judgment that existed in *Kovacs*, we find all of the prerequisites to a money judgment, and see no reason to determine that the defendant's obligation should be excluded from the Code definition of "claim."

In the hypothetical instance in which an obligation could not be performed without some *incidental* expenditure of money, e.g. personal transportation costs, but the obligation itself could be performed by a debtor without substantial direct expenditure, this Court might well reach a different result. Under the facts before us, we find that the factual and legal parallels to *Kovacs* are sufficiently compelling so that we must adjudge that the defendant's obligation to perform the cleanup is a dischargeable debt.

*Kovacs* specifically notes that nothing in it suggests that a governmental unit may not pursue criminal remedies to the extent applicable, *and* criminal contempt for the debtor's failing to perform the obligation under the injunction prior to bankruptcy. The instant defendant's discharge, likewise, does not enjoin pursuit of any such remedies as would be otherwise available.

Final summary judgment is hereby entered in favor of the defendant, and his obligations resulting from the Judgment entered on August 26, 1983 in the United States District Court for the Middle District of Florida are expressly found to be debts dischargeable under 11 U.S.C. § 523.

This adversary proceeding is dismissed.