**UNITED STATES of America,**
**Plaintiff–Appellant,**

**v.**

**WHIZCO, INC., et al.**
**Defendants–Appellees.**

**No. 87–5317.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 5, 1988.

Decided March 7, 1988.

John W. Gill, Jr., U.S. Atty., Gerald A. Thornton, Sp. Asst. U.S. Atty., U.S. Dept. of Interior, Knoxville, Tenn., Jacques B. Gelin (argued), Appellate Section, Land & Natural Resources Div., U.S. Dept. of Justice, Robert L. Klarquist, Washington, D.C., for plaintiff-appellant.

John F. Weaver (argued), Lawrence H. Bidwell, IV, Knoxville, Tenn., for defendants-appellees.

Before MERRITT, KENNEDY and KRUPANSKY, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff-appellant the United States ("plaintiff") appeals from the judgment of the District Court denying the plaintiff an injunction against defendant-appellee Donovan Lueking ("defendant"). The plaintiff sought to enjoin defendants Whizco, Inc. ("Whizco"), a coal company, and Lueking, its operator, to obey orders of the Secretary of the Interior requiring the defendants to satisfy their statutory obligation to reclaim their abandoned coal mine. The District Court granted the injunction with respect to defendant Whizco, but denied it as to defendant Lueking.[1] This case presents the question of whether the discharge provisions of the Bankruptcy Code apply to mandatory injunctive relief that cannot be performed personally and would require a debtor in a chapter 7 liquidation bankruptcy to spend money.

---

1. The District Court denied the injunction as to Lueking pursuant to cross motions for summary judgment. The District Court granted the plaintiff's motion in part and enjoined defendant Lueking "from mining coal anywhere in the United States until the violations which gave rise to the instant lawsuit are abated to the satisfaction of the Secretary of the Interior." Joint Appendix at 26. This injunction is not appealed.

The Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1201 *et seq.* (the "Act"), underlies this dispute. It creates a program for reclaiming lands mined for coal. The Act created the Office of Surface Mining Reclamation and Enforcement ("OSM") within the Department of the Interior. The Secretary of the Interior, acting through OSM, has the primary responsibility for administering the Act.

Defendant Lueking was the vice-president and sole shareholder of defendant Whizco, which mined a permitted area in Tennessee. The terms of the permit, and the statute and regulations, 30 U.S.C. §§ 1251–1279, 30 C.F.R. §§ 710–725, obliged Whizco to reclaim the surface area disturbed by the mining. Whizco failed economically and abandoned its mining sites without adequately reclaiming them. The Department of the Interior, through OSM, issued three cessation orders against Whizco for its failure to abate a total of four violations, commanding Whizco to remedy the violations.

When Whizco failed to comply with the orders, the plaintiff brought suit pursuant to 30 U.S.C. § 1271, which provides that where the permittee or his agents fail or refuse to comply with the Secretary's orders, the Secretary "may request the Attorney General to institute a civil action for relief, including a permanent or temporary injunction, restraining order, or any other appropriate order in the district court of the United States." The plaintiff amended its complaint on October 8, 1985 to join Lueking as Whizco's agent and to add the third cessation order. Lueking, d/b/a Lueking Coal Co., Whizco, and Hi Tenn Coal, Inc., had filed for reorganization under Chapter 11 of the Bankruptcy Code on April 8, 1985. On August 23, 1985, the day after the plaintiff filed its complaint, the proceeding was converted to a Chapter 7 liquidation.

In its suit the plaintiff sought a permanent injunction against the defendants from mining coal anywhere in the United States until they remedy the violations. It also sought affirmative remedial action on the part of defendants to perform specific acts of reclamation which would abate the environmental damage at the defendants' surface mining site in Tennessee. The plaintiff claims that the Act does not allow the Secretary the alternative remedy of reclaiming the site and demanding payment for the costs incurred, and the defendants do not dispute this. On September 24, 1986 the District Court entered judgment against defendant Whizco granting the requested injunctive relief. The parties subsequently stipulated that defendant Lueking was the agent of Whizco, that he was potentially subject to the same injunctive relief, that he was unable to perform the affirmative reclamation action personally, and that his debts had been discharged in a Chapter 7 bankruptcy proceeding on December 19, 1985. The District Court then addressed the issue of "[w]hether any affirmative order of relief, that would require the expenditure of money on Mr. Leuking's [sic] part, had been discharged by his bankruptcy." Joint Appendix at 23.

On January 12, 1987 the District Court issued a decision denying in part the plaintiff's request for mandatory injunctive relief against Lueking, holding that his bankruptcy discharged his obligation to reclaim the sites. The court, evaluating Lueking's personal and financial conditions, found that he could not perform the reclamation work ordered "other than by payment of money," and that therefore the injunction was a debt dischargeable in bankruptcy. *Id.* at 24 (citing *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985)). Plaintiff appealed.

Except for debts saved from discharge by 11 U.S.C. § 523(a), a discharge in bankruptcy discharges the debtor from all debts that arose before bankruptcy. 11 U.S.C. § 727(b). As the District Court noted, a debt, for the purposes of the Bankruptcy Code, is a "liability on a claim," *Id.* at § 101(11). The Code further defines a claim as follows:

(A) [a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisput-

ed, legal, equitable, secured, or unsecured; or

(B) [a] right to an equitable remedy for breach of performance *if such breach gives rise to a right to payment,* whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured....

*Id.* at § 101(4) (emphasis added).[2] Defendant Lueking testified in an affidavit that he is 63 years old; that he surrendered all his mining equipment and coal leases in his bankruptcy; that he has neither the physical ability to perform the reclamation work himself nor the right to enter upon the reclamation site; and that he lacks the financial ability to post a reclamation bond or to hire anybody to do the reclamation work. Based on this information, the District Court found that the mandatory relief sought by the plaintiff could not be accomplished by anything other than an expenditure of money by the debtor, and that therefore it was a claim discharged in bankruptcy. *Id.*

The District Court relied on *Ohio v. Kovacs.* In that case the petitioner, the state of Ohio, had obtained an injunction in state court ordering the respondent to clean up a hazardous waste disposal site. When the respondent failed to comply with the injunction, the petitioner obtained the appointment of a receiver, who was directed to take possession of the respondent's property and other assets and to implement the injunction. The respondent filed a personal bankruptcy petition before the receiver had completed the clean up. The Bankruptcy Court, affirmed by the District Court, declared that the respondent's obligation under the injunction was a discharged debt. The Sixth Circuit agreed, holding that the petitioner essentially sought from the respondent only a monetary payment and that such a required payment was a liability on a claim that was dischargeable under the Bankruptcy Code. *In re Kovacs,* 717 F.2d 984 (6th Cir.1983). The opinion stressed that the petitioner was seeking the payment of money from the respondent to the petitioner:

> Ohio claims that there is no alternative right to payment, but when Kovacs failed to perform, state law gave a state receiver total control over all Kovacs' assets. Ohio later used state law to try and discover Kovacs' post-petition income and employment status in an apparent attempt to levy on his future earnings. In reality, the only type of performance in which Ohio is now interested is a money payment to effectuate the [site's] cleanup.

> . . . . .

> We agree, however, with the rationale of the prior opinion in *In re Kovacs, supra,* that *Ohio is essentially trying to obtain a money payment from Kovacs.* The impact of its attempt to realize upon Kovacs' income or property cannot be concealed by legerdemain or linguistic gymnastics. Kovacs cannot personally clean up the waste he wrongfully released into Ohio waters. He cannot perform the affirmative obligation properly imposed upon him by the State court *except by paying money or transferring over his own financial resources. The State of Ohio has acknowledged this by its steadfast pursuit of payment as an alternative to personal performance.*

*Id.* at 987–88 (emphasis added).

The Supreme Court affirmed, finding that the respondent's breach of the petitioner's injunction gave rise to a right to payment within the meaning of 11 U.S.C. § 101(4)(B). 469 U.S. at 282–83, 105 S.Ct. at 709–10. In so holding, the Court stressed that what the petitioner wanted from the respondent after bankruptcy

---

**2.** This issue in this case did not arise under the Bankruptcy Act of 1898 because Section 63 of the Act coupled the term "claim" with the concept of provability, limiting the kinds of obligations dischargeable in a bankruptcy. Only provable debts were dischargeable. § 17(a). Section 63 enumerated classes of debts that were provable, a claim not falling in one of the categories was not provable, and therefore not dischargeable. Claims for equitable relief were not included in the enumerated classes and were therefore not provable as debts, and not dischargeable.

"was the money to defray cleanup costs." *Id.* at 283, 105 S.Ct. at 710.[3] Since the clean up order had been converted into an obligation to pay money, it gave rise to a "right to payment" and thus was a debt dischargeable under the Bankruptcy Code. *Id.*

The distinction between *Kovacs* and the case before this Court is that in the present case the plaintiff is not seeking an order that defendant Lueking pay money to the plaintiff in order to defray cleanup costs. Based on this distinction, the plaintiff argues that an injunctive order such as is involved in this case is discharged only when the government has an alternative right to payment of money in lieu of compelling the operator or his agent to perform his reclamation duties. Here, plaintiff argues, it is seeking a purely equitable remedy; it does not have a legal right to payment under the terms of the Act.[4] "If the only remedy allowed by law is non-monetary, the equitable remedy is not transformed into a claim." *In re Aslan,* 65 B.R. 826, 830–31 (Bankr.C.D.Cal.1986). In contrast, the petitioner in *Kovacs* had converted its equitable remedy, a right to require the respondent to clean up the waste disposal site, into a right to payment of money by means of receivership.

The defendants argue that since defendant Lueking cannot reclaim the mining sites without spending money, the obligation is dischargeable because the breach of the obligation has in reality given rise to a right to payment. 11 U.S.C. § 101(4)(B). They rely on *In re Robinson,* 46 B.R. 136 (Bankr.M.D.Fla.), *rev'd on other grounds,* 55 B.R. 355 (M.D.Fla.1985). In that case, under facts very similar to those of the case at bar, the Bankruptcy Court held that a judgment entered against a Chapter 7 debtor requiring him to restore marshland was discharged in bankruptcy. *Id.* at 138–39. The court reasoned that even though the duty to restore the marshland was facially nonmonetary, the debtor would be required to spend money in order to restore the marshland and that therefore the United States had a right to payment. *Id.* at 139. The court acknowledged that in *Robinson,* unlike in *Kovacs,* the obligation had not "been effectively reduced to a money judgment." *Id.* at 138–39. However, the court reasoned that "Congress intended a broadly inclusive definition of 'claim,'" and concluded that "extension [of *Kovacs*] will allow greater fidelity to the principles expressed by the Supreme Court as we understand them, than would finding the factual difference to require a legal distinction." *Id.*

We acknowledge the limited character of the *Kovacs* holding. It is clear, however, that the defendant does not have the physical capacity to reclaim the mine site himself, and that he would have to hire others to perform the work for him. This would require the expenditure of money. Thus, although the terms of the injunction would not require the payment of money, to the extent that the injunction were to be effective, it would. The injunction could only be enforced by contempt and then only if Lueking sometime in the future has funds either from future earnings, inheritance or gifts, etc. To hold him in contempt a court would have to find that he had the ability to pay others to perform the reclamation work. To the extent, therefore, that the injunction would have purpose or value it would require the payment of money. Thus, when we look at the substance of what the plaintiff seeks, rather than the form of the relief sought, we see that the plaintiff is really seeking payment. We hold that to the extent that fulfilling his obligation to reclaim the site would force the defendant to spend money, the obligation was a liability on a claim as defined

---

**3.** The petitioner's counsel even conceded at oral argument that after the receiver was appointed, the only performance sought from the respondent was the payment of money. 469 U.S. at 283, 105 S.Ct. at 709–10.

**4.** The plaintiff points out that the Secretary does not have the authority to hold bonds for mines permitted by states during the initial regulatory program, the program under which the defendants' permits were issued. The Secretary does have power to accept money from the forfeiture of a bond posted by a permittee under the permanent regulatory program. 30 U.S.C. § 1259.

by the Bankruptcy Code. Therefore, to that extent, we affirm the District Court's judgment that the defendant's bankruptcy discharged his obligation to reclaim the mine site. Our holding is very narrow, however. To the extent that the defendant can comply with the Secretary's orders without spending money, his bankruptcy did not discharge his obligation to comply with the orders. To the extent that the District Court held otherwise, we reverse. The defendant may in the future own equipment which would permit him to personally reclaim some portion of the site. To the extent he can personally act he is not discharged.[5]

Accordingly, we AFFIRM in part and REVERSE in part the judgment of the District Court.

---

**5.** We are not unmindful of the policy problems of allowing a mine operator to discharge his obligation to reclaim his mine. However, policy decisions are the responsibility of Congress, which could easily modify the Bankruptcy Code so that a debtor may not discharge his obligations to reclaim the environment. We note also that penalties assessed against a debtor for violation of environmental laws may be nondischargeable so that the state is not entirely without remedies.