**UNITED STATES of America, Plaintiff,**

v.

**Harold R. HUBLER, individually, and Leon G. Taylor, individually, and Harold R. Hubler and Leon G. Taylor, d/b/a H & T Coal Company, a partnership, and H & T Coal Company, a partnership, Defendants.**

Civ. A. No. 88–2105.

United States District Court,
W.D. Pennsylvania.

June 8, 1990.

---

Jan Bellhy, Kimberly Gilmore and Janet A. Goodwin, Sp. Asst. U.S. Attys., U.S. Dept. of the Interior, Office of the Sol., Pittsburgh, Pa., for plaintiff.

Harold Huber, Osceola Mills, Pa., John Carfley, Philipsburg, Pa., for defendants.

## MEMORANDUM OPINION

BLOCH, District Judge.

■ Presently before this Court are motions for summary judgment filed by both parties. In ruling on a motion for summary judgment, this Court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Inc. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990). Summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c).

### I. Facts

The facts of this case, as seen in a light most favorable to the respective non-movant, are as follows. Defendants Harold R. Hubler and Leon G. Taylor were co-partners doing business under the name H & T Coal Company (H & T). H & T operated a surface coal mining operation in Clearfield County, Pennsylvania, which was permitted by the State of Pennsylvania. On December 11, 1980, the mine was inspected by representatives of the Secretary of the Interior (Secretary) who discovered that the mine site was in violation of 30 U.S.C. § 1272(e)(4) because mining operations were being conducted within 100 feet of a public road without approval of the state. The Secretary issued a Notice of Violation (NOV) which required H & T to either obtain state approval for mining in the unpermitted area or backfill and regrade the area to achieve its approximate original contour and then seed the area during the next planting season. The NOV set a time for compliance of February 17, 1981. The NOV was sent to H & T by certified mail, and was accepted by Theresa Hubler, wife of defendant Hubler. On February 17, 1981, the Secretary modified the NOV, setting a new compliance date of March 19, 1981. On March 23, 1981, a representative of the Secretary inspected the mine site and determined that H & T had not complied with the NOV. The Secretary thus issued a Cessation Order (CO) on March 30, 1981, which required H & T to either obtain a state permit for mining the area within 100 feet of the public road or backfill and regrade the area to achieve its approximate original contour and then seed the area during the next planting season. The CO was sent to H & T by certified mail, and was received by D.E. Colley, an authorized agent of H & T. Neither H & T nor the individual defendants sought administrative review of the NOV or CO. The wrongfully mined area has not been reclaimed by H & T or the individual defendants since issuance of the CO. Defendants' failure to reclaim their permitted mining site resulted in the forfeiture of approximately $40,000 in bonds to the Pennsylvania Department of Environmental Resources.

On February 18, 1981, defendants Hubler and Taylor, individually and doing business as H & T Coal Company, filed a Chapter 11 bankruptcy petition. Defen-

dant Hubler then filed an individual Chapter 11 petition on March 27, 1981, and defendant Taylor filed an individual Chapter 11 petition on April 13, 1981. The defendants' Chapter 11 petitions were subsequently converted to Chapter 7 petitions. Defendants Hubler and Taylor were discharged in bankruptcy on February 21, 1985.

The United States filed the present action seeking, *inter alia,* an injunction compelling defendants to comply with their obligations under the CO. Both parties have filed motions for summary judgment which are presently before this Court. Plaintiff contends that no issues of material fact exist and it is entitled to judgment as a matter of law. Defendants contend that their obligations under the CO were discharged by their bankruptcies, so judgment should be entered in their favor.

## II. Discussion

This Court has jurisdiction to entertain the present dispute pursuant to 30 U.S.C. § 1271(c) and 28 U.S.C. §§ 1331, 1345. Personal jurisdiction is proper as all defendants are citizens of this district. Venue is proper because the surface mining site is located in this district. 30 U.S.C. § 1271(c).

■ Defendants state that plaintiff is not the proper party to bring the present action. Defendants claim that only the State of Pennsylvania is authorized to pursue a remedy for defendants' conduct. Defendants misconstrue the Surface Mining Control and Reclamation Act (SMCRA). Under the SMCRA, both the federal government and the State of Pennsylvania share enforcement responsibility. 30 U.S.C. § 1253(a). The federal government is expressly authorized to institute a civil action whenever a mine or mine operator violates or fails or refuses to comply with a cessation order. 30 U.S.C. § 1271(c).

### A. Discharge of defendants' environmental obligations through bankruptcy

Defendants argue that the clean-up obligations imposed on them by the CO have been discharged in bankruptcy. The plaintiff responds that the obligations imposed by the CO are not "claims" under the Bankruptcy Code, and consequently were not discharged by defendants' bankruptcies.

■ A discharge in bankruptcy discharges the debtor from all debts that arose before bankruptcy unless the debt meets one of the nine specific exceptions to discharge specified in 11 U.S.C. § 523(a). Plaintiff does not contend that defendants' obligations pursuant to the CO fall within one of the nine exceptions to discharge. A "debt" is defined under the Code as liability on a claim. 11 U.S.C. § 101(11). A "claim" is defined as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(4). The issue contested by the parties in this case is whether the CO gives rise to a right to payment.

■ The issue of whether an equitable order requiring a party to engage in affirmative acts to clean up the environment gives rise to a right to payment, and is thus dischargeable, was considered by the Supreme Court in *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). The *Kovacs* Court determined that where a state attempts to recover clean-up costs from a polluter, this type of debt is dischargeable in bankruptcy. However, the Court repeatedly emphasized that its holding is limited to situations where a clean-up order is "converted into an obligation to pay money." *Id.* at 283, 105 S.Ct. at 710. The Court strongly implied that equitable orders which demand performance and which cannot be satisfied merely by making a monetary payment to the governmental body which issued the order are not dischargeable in bankruptcy. In this re-

gard, the Court expressly approved the Court of Appeals for the Third Circuit's decision in *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267 (3d Cir.1984).

In *Penn Terra*, the Court of Appeals held that an injunction which required the defendant to restore land which had been surface mined was not stayed by the bankruptcy automatic stay provision, 11 U.S.C. § 362. The injunction required the defendant to backfill and grade a surface mine, submit erosion plans, seal a deep mine, remove the top strata over a gas line, and complete top soil spreading, mulching, and seeding. The Court held that the injunction was not subject to the automatic stay because the injunction did not constitute a money judgment. The injunction was not a money judgment because:

> [I]t was not intended to provide compensation for past injuries. It was not reduceable to a sum certain. No monies were sought by the Commonwealth as a creditor or obligee. The Commonwealth was not seeking a traditional form of damages in tort or contract, and the mere payment of money, without more, even if it could be estimated, could not satisfy the Commonwealth Court's direction to complete the backfilling, to update erosion plans, to seal mine openings, to spread top soil, and to implement plans for erosion and sedimentation control. Rather, the Commonwealth Court's injunction was meant to prevent future harm to, and to restore, the environment.

*Id.* at 278.

The Supreme Court characterized the injunction in *Penn Terra* "as an effort to enforce the police power statutes of the state, not a suit to enforce a money judgment." *Kovacs*, 469 U.S. at 283 n. 11, 105 S.Ct. at 710 n. 11. The Court stated that

"[t]he automatic stay provision does not apply to suits to enforce the regulatory statutes of the state, but the enforcement of such a judgment by seeking money from the bankrupt ... is another matter." *Id.*

Although *Penn Terra* involved the automatic stay provision of the Bankruptcy Code whereas the present case involves the question of discharge, *Penn Terra* demonstrates that a clean-up order does not constitute a right to a money payment merely because the enjoined party will be forced to expend money when fulfilling its clean-up obligations. The Supreme Court's approval of *Penn Terra* shows that the Court limited its holding in *Kovacs* to mean a clean-up obligation is discharged only in the situation where monetary payment is the relief sought from the enjoinee.[1] *See also In re Chateagay Corp.*, 112 B.R. 513 (S.D.N.Y. 1990) (*Kovacs* stands for the proposition that where the government has the option of converting an affirmative injunction into a right to monetary compensation, the obligation is dischargeable in bankruptcy).

In the present case, the CO demands performance by the defendants. Plaintiff does not seek a payment from the defendants, but instead seeks to compel defendants' compliance with their obligations under the CO. Plaintiff states that it is not statutorily authorized to demand a monetary payment in lieu of performance, and defendants do not contest this assertion. Although plaintiff previously requested a performance bond,[2] the request of a performance bond does not constitute an attempt to convert defendants' obligations into a monetary payment such as that involved in *Kovacs*. The bond initially sought by plaintiff was not intended as a means of satisfying defendants' obligations, but instead was intended as a

---

1. Defendants rely on *United States v. Whizco*, 841 F.2d 147 (6th Cir.1988), where the Court of Appeals for the Sixth Circuit held that an injunction requiring a person to reclaim an abandon mine is a debt dischargeable in bankruptcy if the party will have to spend money to fulfill its obligations. This Court finds that *Whizco* is contrary to the rationales of *Penn Terra* and *Kovacs*. Consequently, this Court will not follow *Whizco*.

2. Plaintiff has withdrawn its request for a performance bond and now only requests an injunction. (Brief in response to defendants' motion for summary judgment at 8 n. 3.) The defendants' permit was obtained prior to the applicability of 30 U.S.C. § 1259, the performance bond provision of the Surface Mining Control and Reclamation Act. At the time H & T received the permit, federal law did not require permit applicants to post a bond.

means of motivating defendants to comply with their obligations—failure to comply with the CO might have resulted in forfeiture of the bond but would not have relieved defendants of their obligations under the CO.

As plaintiff has not converted defendants' obligations into a monetary liability, nor may plaintiff do so, defendants' obligations are not "claims" under the Bankruptcy Code. Consequently, this Court finds that defendants' obligations under the CO were not discharged by defendants' bankruptcies. Therefore, defendants' motion for summary judgment is denied.

### B. Validity of the CO and NOV

Defendants contend that the NOV and CO are invalid. Defendants admit, however, that they failed to utilize the administrative procedures available under the SMCRA for appealing administrative orders. Defendants argue that their bankruptcy proceedings automatically stayed the NOV and CO and barred plaintiff from "continu[ing] to pursue the defendants by the issuance of further citations, orders and/or assessments." (Defendants' brief in opposition at 2.)

Defendants' contentions are meritless. First, the automatic stay, 11 U.S.C. § 362, does not apply to orders such as the CO which require affirmative action to reclaim lands scarred by surface mining. *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267 (3d Cir.1984). Second, failure to exhaust administrative remedies under the SMCRA precludes a subsequent legal challenge of an administrative order. *Graham v. Office of Surface Mining Reclamation and Enforcement*, 722 F.2d 1106, 1109 n. 3 (3d Cir.1983); *Mullins Coal Co. v. Clark*, 759 F.2d 1142, 1144–45 (4th Cir.1985); *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1092 (6th Cir.1981). Thus, defendants are bound by the NOV and CO, and cannot now challenge their validity.

### C. Effect of forfeiture of state bonds

Defendants contend that their forfeiture of bonds to the State of Pennsylvania due to their failure to reclaim their mine site relieves them of their obligations under the CO. This argument contains two crucial flaws. First, the area within 100 feet of a public road for which the CO was issued was not covered by H & T's state permit. Defendants do not claim that their state bonds were intended to cover unpermitted mining sites. Thus, the bonds posted by H & T were not intended to cover the reclamation costs for the unauthorized mining area. Therefore, forfeiture of the bonds cannot serve to fulfill the defendants' responsibility for reclamation of the unpermitted area. Second, the NOV and CO were issued during the interim phase of the SMCRA.[3] During the interim phase, the Secretary was responsible for enforcing the SMCRA, while Pennsylvania was responsible for enforcing its own regulatory programs. 30 U.S.C. § 1252; *Hodel v. Virginia Surface Mining and Reclamation Association*, 452 U.S. 264, 270–71, 101 S.Ct. 2352, 2356–57, 69 L.Ed.2d 1 (1981). During this interim period, the Secretary could not cede his enforcement role to the state. *Hodel*, 452 U.S. at 271, 101 S.Ct. at 2357. Hence, state enforcement via forfeiture of the bonds did not relieve the federal government of its enforcement obligation, even assuming the bonds applied to the unpermitted area. Forfeiture of the bonds did not affect the Secretary's enforcement duties, and thus did not relieve defendants from their obligations under the CO.

### D. Liability of the defendants

The NOV and CO were directed to H & T Coal Company, and specifically ordered H & T to take remedial action. Neither the NOV nor the CO listed defendant Hubler or defendant Taylor personally. However, the failure to list the individual defendants on the NOV and CO does not relieve them of obligations thereunder. Title 30 U.S.C. § 1271(c) authorizes this Court to issue an injunction against the "permittee or his agent." Defendants Hu-

---

**3.** The Secretary conditionally approved Pennsylvania's regulatory program on July 31, 1982. 30    C.F.R. § 938.10 (1989).

bler and Taylor are clearly the agents of H & T. Hubler and Taylor owned H & T, conducted the day-to-day business activities of H & T, and were responsible for insuring that H & T complied with the applicable laws and regulations concerning surface mining. (Defendants' responses to plaintiff's interrogatories, ¶¶ 5, 6, 17–20.) These facts are sufficient to make Hubler and Taylor agents of H & T for purposes of 30 U.S.C. § 1271(c). *See United States v. Dix Fork Coal Co.*, 692 F.2d 436, 440 (6th Cir. 1982) ("agent" includes "person charged with the responsibility for protecting society and the environment from the adverse effects of the surface coal mining operation and particularly charged with effectuating compliance with environmental performance standards during the course of a permittee's mining operation").

Additionally, under Pennsylvania law, partners are jointly and severally liable for the wrongful acts of any partner acting in the ordinary course of business of the partnership or with the authority of his co-partners. 15 Pa.C.S.A. § 8325. Hubler and Taylor conducted the operations of H & T and regulated H & T's compliance with the applicable environmental laws. Their wrongful acts of mining in an unpermitted area were conducted in the ordinary course of their partnership and apparently with the authority of each other. Defendants cannot contend that they lacked notice of the NOV or CO. Defendants admit that H & T received both the NOV and CO. (Stipulation of facts, ¶¶ 4, 6.) As general partners of H & T, notice of service upon the partnership is imputed to them. 15 Pa.C.S.A. § 8324. Therefore, Hubler and Taylor are jointly and severally liable for the wrongful mining performed by H & T. Thus, H & T, Hubler, and Taylor are each obligated to comply with the CO.

### E. Summary

It is clear that defendants Hubler and Taylor were general partners of H & T. H & T received the NOV and CO issued by the plaintiff. The defendants have not yet

complied with the CO. The defendants' obligations under the CO continue to exist, as the reclamation of the site has not been performed and the CO has not been modified, vacated or terminated by the Secretary. 30 U.S.C. § 1271(a)(3). Accordingly, summary judgment is appropriate because there is no genuine issue as to any material fact and the plaintiff is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Pursuant to 30 U.S.C. § 1271(c), this Court will enjoin defendants to comply with the abatement obligations specified by the CO. Specifically, defendants shall backfill and regrade the mining site in question so as to achieve its proximate original contour. Defendants shall then seed the area during the first normal period of favorable planting conditions. Defendants shall perform these obligations in conformance with, and to the quality level mandated by, applicable laws and regulations. Defendants shall complete the backfilling and regrading within 90 days of the entry of the accompanying order. If defendants cannot obtain consent to enter upon the site to reclaim it, defendants shall notify this Court and the plaintiff in writing, and defendants' obligations shall then be contingent upon plaintiff's procurement of a right of entry pursuant to 30 U.S.C. § 1237(a) and 30 C.F.R. § 877 (1989). This Court will retain jurisdiction of this matter pending compliance by the defendants. Defendants shall notify this Court upon completion of their reclamation obligations.[4]

An appropriate Order will be issued.

### JUDGMENT ORDER

AND NOW, this 8th day of June, 1990, upon consideration of Plaintiff's Motion for Summary Judgment filed in the above captioned matter on February 9, 1989, and Defendants' Motion for Summary Judgment filed in the above captioned matter on

---

**4.** Plaintiff further requests this Court to enjoin defendants from conducting surface mining activities within the United States pending their compliance with the abatement obligations ordered by this Court, and to enjoin defendants from violating surface mining laws and regulations. This Court does not find that such further relief is warranted at this time.

July 26, 1989, and upon further consideration of the parties' responses thereto,

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is DENIED, and that Plaintiff's Motion for Summary Judgment is GRANTED in accordance with the accompanying Memorandum Opinion, to wit:

Defendants are ENJOINED to comply with the abatement obligations specified by the Cessation Order issued by the Office of Surface Mining, United States Department of the Interior, on March 30, 1981. Specifically, defendants are hereby ordered to backfill and regrade the mining site in question so as to achieve its proximate original contour. Defendants are hereby ordered to then seed the area during the first normal period of favorable planting conditions. Defendants are hereby ordered to perform these obligations in conformance with, and to the quality level mandated by, applicable laws and regulations. Defendants are hereby ordered to complete the backfilling and regrading within 90 days of the entry of this Order. If defendants cannot obtain consent to enter upon the site to reclaim it, defendants are hereby ordered to notify this Court and the plaintiff in writing, and defendants' obligations shall then be contingent upon plaintiff's procurement of a right of entry pursuant to 30 U.S.C. § 1237(a) and 30 C.F.R. § 877 (1989). This Court will retain jurisdiction of this matter pending compliance by the defendants. Defendants shall notify this Court upon completion of their reclamation obligations.