In re Lyle Van DANIELS, Debtor.

COMMONWEALTH OF KENTUCKY, NATURAL RESOURCES CABINET and Environmental Protection Cabinet, Appellants,

v.

Lyle Van DANIELS, Appellee.

Civ. A. No. 91–44.

United States District Court,
E.D. Kentucky,
at London.

June 7, 1991.

J. Alec MacKenzie, Robin B. Thomerson, Department of Law Frankfort, Ky., for appellant.

Ralph W. Hoskins, Corbin, Ky., for appellee.

## MEMORANDUM OPINION

UNTHANK, Senior District Judge.

### INTRODUCTION

This matter comes before the Court on the appeal of the Commonwealth of Kentucky and its executive agencies from an unfavorable ruling by the Bankruptcy Court holding that the obligations of the debtor towards the appellants were dischargeable in bankruptcy to the extent they would require the expenditure of money and finding that the appellants did not have a sufficient interest to assert an exception to discharge under the provisions

of 11 U.S.C. Section 523(a)(6). The jurisdiction of this Court is alleged under the provisions of 28 U.S.C. Section 158(a).

## FACTS

Lyle Daniels obtained a two-acre surface mining permit for a site located on Alex Creek, in Knox County, Kentucky on October 18, 1984. Following the commencement of mining activities, the Kentucky Natural Resources and Environmental Protection Cabinet (the Cabinet) determined that this permit was related to two other two-acre permits and so the site was "over acreage." The Cabinet issued a Cessation Order on January 9, 1986.

Daniels also engaged in surface coal mining activities without a permit on a site located on Helton Creek in Knox County during 1986. A Cessation Order was issued by the Cabinet relating to this site on October 15, 1986.

The Cabinet filed a complaint in Franklin Circuit Court, seeking to enforce the order relating to the Alex Creek site on July 15, 1987. The relief request sought an injunction requiring the appellee to reclaim the site to its approximate original contour in compliance with the reclamation standards set out in K.R.S. Chapter 350. On March 29, 1988, the Cabinet also filed a complaint in Franklin Circuit Court concerning the Helton Creek site seeking an injunction compelling Daniels to complete remedial measures.

Daniels filed for bankruptcy on September 2, 1988 listing his obligations to the Cabinet as unliquidated indebtedness to be discharged. Despite this bankruptcy filing, the Cabinet proceeded with its actions in the Franklin Circuit Court. The Cabinet moved for summary judgment as to its request for a permanent injunction for the Helton Creek site on January 23, 1989 and this was granted on February 24, 1989. It is undisputed that no reclamation work has been performed on the site.

A summary judgment was also sought as to the Alex Creek site on October 5, 1989 and this motion was granted on October 31, 1989. This site has now been reclaimed to acceptable two-acre standards, but has not been reclaimed to permanent program standard. The appellee had posted a bond for this site which was forfeited and used by the Cabinet to perform partial reclamation.

The Commonwealth of Kentucky and its executive agencies commenced this adversary proceeding on January 18, 1990 to determine whether Daniel's reclamation obligations were dischargeable in bankruptcy. The Bankruptcy Court decided on January 11, 1991 that Daniel's reclamation obligations were dischargeable to the extent that they could only be accomplished by the expenditure of money and that the debts did not meet the requirements to qualify as an exception to discharge under the provisions of 11 U.S.C. Section 523(a)(6). The appellants filed suit in federal district court and the case is now ripe for decision.

## DISCUSSION

The appellants argue that the Bankruptcy Court erred in concluding that the claims of the Commonwealth and its executive agencies were claims that were dischargeable in bankruptcy to the extent that an expenditure of money would be required by the debtor. The appellants also argue that even if the claims were dischargeable, Section 523(a)(6) would apply as an exception to discharge. Daniels has chosen to rely on the record and has made no argument concerning why the Bankruptcy Court decision should be affirmed. After a review of the evidence presented, the undersigned concludes that the decision of the Bankruptcy Court should be reversed and the debts should be found to be an exception to discharge under the provisions of Section 523(a)(6).

The undersigned notes that the appellants have challenged the Bankruptcy Court's conclusion that the reclamation obligations were claims, dischargeable in bankruptcy, to the extent they required the expenditure of money. The undersigned agrees with the Bankruptcy Court that the case of *United States v. Whizco, Inc.*, 841 F.2d 147 (6th Cir.1988), is dispositive of this question for courts in this circuit. The Sixth Circuit Court of Appeals concluded in

*Whizco* that an injunction requiring a person to reclaim a mining site was a debt dischargeable in bankruptcy to the extent that the party would have to expend money. While several courts have indicated disagreement with *Whizco*,[1] this Court is required to follow the Sixth Circuit. Therefore, the undersigned cannot grant the appellants relief based on this ground.

■ The Court now turns the argument of the appellants that these debts should found to be exceptions to discharge under the provisions of Section 523(a)(6). This statute provides that a discharge granted under the provisions of 11 U.S.C. Section 727 does not discharge a debtor for a debt "for willful and malicious injury by the debtor to *another entity* or to the property of another entity." 11 U.S.C. Section 523(a)(6) (emphasis added). The Bankruptcy Court found that the Commonwealth and its executive agencies lacked sufficient interest in the damaged properties to assert the exception provided in Section 523(a)(6). However, the appellants argue that the Commonwealth itself, as an entity, was damaged and so the statute is applicable in this case. The undersigned agrees with this assertion.

The undersigned concludes that the Commonwealth of Kentucky should be regarded as an "entity" that has been injured by the debtor for the purposes of Section 523(a)(6). Kentucky law provides that:

The general assembly finds that the Commonwealth is the leading producer of coal and that the production of coal in Kentucky contributes significantly to the nation's energy needs. The general assembly further finds that unregulated surface coal mining operations cause soil erosion, damage from rolling stones and overburden, landslides, stream pollution, the accumulation of stagnant water and the seepage of contaminated water, increase the likelihood of floods, destroy the value of land for agricultural purposes, destroy aesthetic values, counteract efforts for the conservation of soil,

water and other natural resources, destroy or impair the property rights of citizens, create fire hazards, and in general create hazards dangerous to life and property, so as to constitute an imminent and inordinate peril to the welfare of the Commonwealth. The general assembly further finds that lands that have been subjected to surface coal mining operations and have not been reclaimed and rehabilitated in accordance with modern standards constitute the aforementioned perils to the welfare of the Commonwealth.

K.R.S. Section 350.020. Thus, Kentucky law would appear to define the Commonwealth as an entity which can be damaged by one who surface mines coal. The undersigned notes that the Bankruptcy Court made a finding that Daniels' mining activities caused injury to the natural resources and environment of Kentucky. (Finding of Fact No. 20).

The case of *In re Tinkham*, 59 B.R. 209 (Bankr.D.N.H.1986) provides support for the Court's decision that the Commonwealth and its executive agencies should be allowed to challenge the dischargeability of these debts under Section 523(a)(6). This case involved a debtor who discharged waste without an permit and the state of New Hampshire sought to have the clean up costs found to be an exception to discharge under section 523(a)(6). The court noted that while the violation involved did not relate to the property of an objecting creditor, since another entity, the state, was involved and had been damaged, a Section 523(a)(6) action could be maintained by the damaged entity. *In re Tinkham*, 59 B.R. at 213 n. 1. The court in *In re Tinkham* went on to find that the debt was dischargeable since the requirement of a "willful and malicious injury" was not met. However, the case indicates that a state is an "entity" which can object to discharge of a debt for environmental damage under Section 523(a)(6).

1. See *In re Chateaugay,* 112 B.R. 513 (S.D.N.Y.1990) and *United States v. Hubler,* 117 B.R. 160 (W.D.Pa.1990).

The Court having concluded that the Commonwealth is an "entity" for the purposes of Section 523(a)(6), next turns to the question concerning whether Daniels' actions constitute a "willful and malicious injury" for the purposes of the statute. The standard for interpreting the meaning of what is meant by "willful and malicious injury" was established by the Sixth Circuit Court of Appeals in *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987). *Perkins* involved a finding by the Sixth Circuit that a judgment of $180,000 for malpractice against a debtor podiatrist was nondischargeable under Section 523(a)(6). In *Perkins*, the Sixth Circuit adopted the so-called more lenient standard for interpreting the meaning of the aforementioned language. *Perkins*, 817 F.2d at 394. Under the more lenient standard, the statute is interpreted to require an intentional act that results in injury rather than, as under the stricter standard, an act with intent to injure. *Perkins*, 817 F.2d at 393. The Court, quoting with approval 3 COLLIER ON BANKRUPTCY 523–111 (15 ed. 1986), stated that:

> An injury to an entity or property may be malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will. The word "willful" means "deliberate or intentional," a deliberate or intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

*Perkins*, 817 F.2d at 393. The Court in *Perkins* went on to conclude that the doctor's acts of malpractice were done intentionally, without just cause, and necessarily producing harm. Therefore, the debtor was denied discharge.

Applying the *Perkins* standard to the present case, the undersigned concludes that Daniels' illegal mining activities constituted a "willful and malicious injury" as to the Helton Creek and Alex Creek sites. The appellee was found by the Bankruptcy Court to have knowingly violated K.R.S. Section 350.060 by engaging in surface mining without a valid permit as to the Helton Creek site. (Conclusion of Law No. 3). The over acreage beyond the two-acre permit at the Alex Creek site was found to constitute a knowing violation of Section 350.060. (Conclusion of Law No. 2, 4). These mining activities injured the natural resources and environment of Kentucky. Therefore, the appellee intentionally performed an act, without just cause, which caused harm. Furthermore, any act which violates the provisions of a statute has been found to constitute a willful and malicious act for dischargeability purposes. *In re Schmehl*, 57 B.R. 546 (Bankr.N.D. Ohio 1986). Thus, Daniels was guilty of committing a "willful and malicious injury" as to both sites.

The Court has found that the Commonwealth was an "entity" for the purposes of Section 523(a)(6) and that the actions of Daniels constituted a "willful and malicious injury." Thus, the requirements for an exception to discharge under Section 523(a)(6) are met and so the Court concludes that the decision of the Bankruptcy Court must be reversed on this issue in favor of the appellants.

The Bankruptcy Court relied upon the cases of *In re Muller*, 111 B.R. 911 (Bankr. S.D.Cal.1990) and *In re Krause*, 114 B.R. 582 (Bankr.N.D.Ind.1988) for its conclusion that the Commonwealth and its executive agencies did not have a sufficient *property interest* to object to discharge under Section 523(a)(6). However, the Court has determined that the Commonwealth is an "entity" for the purposes of the statute and so should be allowed to object to discharge under Section 523(a)(6). Since these cases deal with the question of determining a sufficient interest in property to maintain such an action, they are inapplicable to the present case.

The undersigned concludes that the decision of the Bankruptcy Court should be reversed. While Sixth Circuit precedent requires that these claims by the Commonwealth and its executive agencies be regarded as debts that are dischargeable in bankruptcy to the extent that money must be paid, the undersigned concludes that Section 523(a)(6) applies to exempt these

debts from discharge. Thus, the decision of the Bankruptcy Court is reversed. A separate order will be entered simultaneously consistent with this opinion.