CORDERO MINING CO., Oakwood Red Ash Coal Corp., Jewell Smokeless Coal Corp., Plaintiffs,

v.

Thomas K. VANDYKE, James Ray Vandyke, Diddle–Bird Explosives, Inc., Donald Hodel, Secretary, U.S. Dept. of the Interior, Defendants.

Civ. A. No. 87–0175–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

June 21, 1988.

Dennis E. Jones, Lebanon, Va., for plaintiffs.

Timothy W. Gresham, James E. Jones, Abingdon, Va., for Vandykes and Diddle–Bird.

Paul Molinar, Charles P. Gault, Sp. Asst. U.S. Attys., Knoxville, Tenn., for Dept. of Interior.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This case concerns the jurisdiction of the court pursuant to the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. A. § 1201, *et seq.* (hereinafter "Act"). The plaintiffs seek a court order allowing them entry onto the Vandykes' land to accomplish reclamation required of them by the Act. The Secretary of the Interior has filed a counterclaim and crossclaim seeking the same relief. For the reasons stated below, the court concludes that it is without jurisdiction to provide a remedy and dismisses the entire case.

## FACTS

The court has before it three affidavits representing the positions of all the parties. The material facts are not in dispute. Jewell Smokeless Coal Corporation ("Jewell") and its subsidiary Oakwood Red Ash Coal Corporation ("Oakwood") conducted an underground mining operation from January 1971 through December 1978 at a site in Buchanan County, Virginia. In 1980, Jewell contracted with Sam Blankenship for the reclamation of this site. Blankenship was to receive, as compensation, any coal that he was able to sever. The parties disagree as to whether he was to receive compensation apart from the coal and whether Jewell received any coal from the reclamation operation. In October of 1980, the Office of Surface Mining Reclamation and Enforcement ("OSM") issued a Notice of Violation ("NOV") to Blankenship for various violations at the site. In December of that year it issued him a cessation order. Blankenship filed an administrative appeal and an Administrative Law Judge ("ALJ") vacated the NOV in May of 1981. The ALJ was reversed, however, and the NOV was affirmed and reinstated in April of 1983. Jewell attempted to reclaim the land, evidently not in a satisfactory manner, in early 1981. On January 8, 1985, OSM modified the NOV to include Jewell. It then issued Jewell failure to abate cessation orders, which Jewell administratively appealed. In January of 1986, the NOV was modified to include Oakwood.

The parties eventually settled the dispute as the result of pressure OSM asserted against Cordero Mining Company ("Cordero"), an affiliate of Jewell. OSM informed Cordero that it would not issue the company a permit for strip mining in Wyoming until the Virginia NOV was abated or the parties otherwise reached an agreement. Accordingly, Cordero, Jewell, Oakwood, Blankenship and OSM entered into an agreement (hereinafter "Settlement Agreement") that provided for civil penalties and

the reclamation of the Virginia site. On January 28, 1986, an ALJ approved the Settlement Agreement and issued a consent decision.

Meanwhile, by deed dated August 30, 1982, Thomas K. Vandyke and James Ray Vandyke purchased the site. The Vandykes are the managing officers and directors of Diddle–Bird Explosives, Inc., a Virginia corporation that sells explosives to the mining industry. The corporation uses the site for storing its explosives magazines. The corporate office trailer is also located on the property. Because of strict federal regulations regarding explosives, the site's size and isolation make it particularly suited and valuable for that business. Neither the Vandykes nor the corporation (hereinafter "defendants") have mined the property.

Matters came to a head when Jewell approached the defendants and advised them that it needed to reclaim the site. The required reclamation would entail removing a high wall and building a sedimentation pond in the area of the office. These changes would substantially impair the property's value in regards to the explosives business. Because Jewell refused to compensate the defendants for their anticipated loss, they refused permission for the reclamation. At the time of the purchase, the defendants did not have actual knowledge of the site's reclamation problems. Moreover, the Secretary admits that the defendants acted in good faith and are not involved in a conspiracy to avoid the reclamation.

In order to abide by the Settlement Agreement, the plaintiffs brought suit in this court against the defendants and the Secretary. The Secretary counterclaimed against the plaintiffs and crossclaimed against the defendants. The Secretary seeks an injunction requiring the plaintiffs to proceed with the reclamation and requiring the defendants to allow the reclamation. Both the defendants and the plaintiffs have filed motions to dismiss the Secretary's claims. In addition, the defendants have moved for summary judgment on the plaintiffs' complaint and the Secre-

tary's crossclaim. The Secretary opposes these motions.

## ANALYSIS

The defendants raise jurisdictional and constitutional defenses but the jurisdictional question is dispositive. The court does not reach the constitutional arguments because courts should "avoid constitutional issues when resolution of such issues is not necessary for disposition of a case." *In re Snyder,* 472 U.S. 634, 642, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985).

The plaintiffs assert that 28 U.S.C. § 1331 (federal question) and 30 U.S.C.A. § 1270 (citizens suit under the Act) confer jurisdiction on this court. Although 30 U.S.C.A. § 1270(e) specifies that the citizens suit provision does not restrict one's right to seek enforcement of the Act or other relief pursuant to statute or common law, the court feels that in this instance any claim to jurisdiction must rest on the citizens suit provision alone. Apart from a general assertion that they have no adequate remedy at law, the plaintiffs do not raise any federal question cause of action affording them relief. Moreover, they have chosen not to brief the issues and have apparently decided to rely on the arguments of the Secretary. Under these circumstances, their jurisdictional claim must rest on 30 U.S.C.A. § 1270.

The pertinent language of Section 1270 states that

> any person having an interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with this chapter ... against any other person who is alleged to be in *violation* of any *rule, regulation, order or permit* issued pursuant to [the Act]....

30 U.S.C.A. § 1270(a)(1) (1986) (emphasis added). Although the plaintiffs qualify as persons "having an interest" that "may be adversely affected," the defendants are not in violation of any rule, regulation, order or permit issued pursuant to the Act. They are not parties to the Settlement Agreement. Nor are they acting in concert or on the behalf of any party to thwart that

Agreement; they are simply defending their own interests. Moreover, the fact that the defendants' property lies unreclaimed does not provide plaintiffs with jurisdiction. Section 1270(a)(1) "does not provide for an action against persons who are in violation of the Act itself." *Oklahoma Wildlife Federation v. Hodel*, 642 F.Supp. 569, 572 (N.D.Okla.1986). To have jurisdiction, there must be·a violation of an affirmative order issued under the Act. Accordingly, the court lacks jurisdiction.

■ The Secretary's crossclaim is based upon 28 U.S.C. § 1345 and 30 U.S.C.A. § 1271(c). Section 1345 provides the district courts with original jurisdiction over civil suits commenced by the United States or commenced by an agency or officer of the United States expressly authorized to sue by Act of Congress. The only authorization advanced by the Secretary in this case is 30 U.S.C.A. § 1271(c). In pertinent part, this section allows the Secretary to

> request the Attorney General to institute a civil action for relief ... whenever such *permittee or his agent* ... violates or fails to comply with any order or decision issued by the Secretary [or] ... interferes with, hinders, or delays the Secretary or his authorized representatives in carrying out the provisions of this chapter.... [The district] court shall have jurisdiction to provide such relief as may be *appropriate.*

30 U.S.C.A. § 1271(c) (1986) (emphasis added). The Secretary's crossclaim alleges that the defendants "have interfered with reclamation efforts by refusing to let the responsible operators return to the premises for purposes of abating the violations and reclaiming the mine site." As noted previously, the defendants have not violated any order or decision of the Secretary. More importantly, the defendants are not permittees nor agents of permittees. Because Section 1271(c) authorizes a civil action only against a permittee or his agent, the court also lacks jurisdiction over the crossclaim.

■ At oral argument, however, the Secretary advanced an additional basis for jurisdiction. The Secretary contends that Section 1271(c) confers jurisdiction over the permittee plaintiffs on the Secretary's *counterclaim* and that, in the exercise of fashioning "appropriate" relief, the court has jurisdiction to order the defendants to allow the reclamation. The Secretary's argument is innovative and intriguing. The court has been unable to discover precedent either supporting or disallowing such an approach. Although Section 1271(c) conceivably can be read to provide jurisdiction over the defendants in such a manner, a contrary interpretation is more reasonable. The statute explicitly permits an action against only the "permittee or his agent." To allow the clause providing for "appropriate" relief to extend jurisdiction over other entities would render the previous clause redundant and useless. The remedy provision would swallow up the "permittee or his agent" language. Although Congress could easily have drafted this section to provide jurisdiction over the defendants, it did not do so. Accordingly, the court believes that Section 1271(c) allows the Secretary to maintain the counterclaim against the plaintiffs, but does not allow the court to assume jurisdiction over the defendants on the counterclaim in order to provide an "appropriate" remedy.

■ Even if the court could assume jurisdiction over the defendants on the Secretary's counterclaim, forcing the defendants to allow the reclamation would not be an "appropriate" remedy. "By its terms the statutory language of § 1271(c) does not restrict the court's inherent equitable powers." *United States v. Threet*, 684 F.Supp. 169, 172 (M.D.Tenn.1987). Nevertheless, the equities favor the defendants. They are innocent parties, had no notice of the reclamation problem, and have conducted their business on the property for over five years. They were not parties to the Settlement Agreement. They have never mined the property. The plaintiffs have offered no compensation to the defendants and their only reason for attempting to reclaim the property now is because they wish to obtain a permit from OSM to strip mine in Wyoming. Although the plaintiffs wish to avoid the loss to their business if they are unable to mine in Wyoming, they are not

willing to compensate the defendants for the loss of *their* business. Moreover, one of the purposes of the Act is to "assure that adequate procedures are undertaken to reclaim surface areas as contemporaneously as possible with the surface coal mining operations." 30 U.S.C.A. § 1202(e) (1986). This attempted reclamation is obviously not contemporaneous with the mining operation. Finally, the Settlement Agreement allows the Secretary to seek other administrative and legal remedies against the plaintiffs if the reclamation does not occur. The Secretary, therefore, is not without a means to punish the plaintiffs and to deter other violators. The court fully understands and sympathizes with the Secretary's position but the equities are on the side of the defendants. Although the court does not believe that it has jurisdiction over the defendants on the Secretary's counterclaim, an "appropriate" remedy would not include forcing the defendants to allow the reclamation without compensation.

■ The analysis above is dispositive of the questions before the court. Nevertheless, the Secretary has raised a few issues that should be briefly addressed. The Secretary argues that pursuant to the Supremacy Clause of the United States Constitution, the defendants are jointly liable for the reclamation. The defendants accepted title when the property was in violation of the Act and after enforcement actions had begun. Accordingly, the Secretary contends that the full effect of the reclamation objectives of the Act apply equally to the plaintiffs and the defendants. The argument relies heavily on *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). In this case Kovacs' bankruptcy trustee successfully sought the discharge of an injunction that required the estate to reclaim a toxic waste site. After concluding that Kovacs was entitled to the discharge, the Court stated that it was well to emphasize what it did not decide. It noted that

> we do not question that anyone in possession of the site—whether it is Kovacs or another in the event the receivership is liquidated and the trustee abandons the property, or a *vendee* from the receiver or the bankruptcy trustee—must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions.

*Id.* at 285, 105 S.Ct. at 711. (Emphasis added). The Supreme Court also stated that

> If the property was worth more than the costs of bringing it into compliance with state law, the trustee would undoubtedly sell it for its net value, and the *buyer* would clean up the property, in which event whatever obligation Kovacs might have had to clean up the property would have been satisfied.

*Id.* at 284 n. 12, 105 S.Ct. at 710 n. 12 (emphasis added). Although the Secretary's arguments and observations are well taken, they are inapposite to the present case.

No one disputes that the Supremacy clause makes federal environmental legislation the "law of the land." Nevertheless, it is the law *as written* that is supreme. The jurisdictional provisions of the Act cannot be separated from its substantive provisions. Regardless of whether a piece of property is in violation of the Act, this court only has jurisdiction to the extent that the Act, as written, provides jurisdiction. For example, as previously stated, Section 1270(a)(1) "provides for an action against any other person who is in violation of any rule, order or permit issued pursuant to the Act, but does not provide for an action against persons who are in violation of the Act itself." *Oklahoma Wildlife Federation*, 642 F.Supp. at 571–72. The Act was drafted in this manner to assure that operators cannot be sued by citizens for alleged violations of the Act when they are in compliance with the orders and regulations of the Secretary. Otherwise, citizens could sue when the operators were acting in accordance with the Secretary's rulings but those rulings were allegedly not in accord with the Act. *Id.* at 572 (discussing legislative history of the Act). This illustration serves to demonstrate the

limited nature of the court's jurisdiction under the Act. The Supremacy Clause is not the issue. Moreover, *Kovacs* does not mandate a contrary decision. All that the *Kovacs' dicta* stands for is the proposition that the buyer of the property must comply with the applicable environmental laws. In the case at hand, the applicable environmental law is the Act. As noted, it does not provide for jurisdiction in this instance.

■ The Secretary also argues that the defendants had constructive notice that the property was in violation of the Act and were charged with matters that would be disclosed on prudent inquiry. The case the Secretary cites, however, deals with record notice. Purchasers have a "duty to inquire as to sources of information readily disclosed by matters of record." *Allen v. Green,* 229 Va. 588, 594, 331 S.E.2d 472, 476 (1985). Although the defendants knew that the land had been mined, nothing in the land records would indicate the property's reclamation status. Moreover, Jewell's affidavit states that it finished the reclamation in early 1981 after Blankenship was issued an NOV in October of 1980. This reclamation apparently was not in compliance with the Act. Nevertheless, the defendants certainly can not be required to know this fact from merely looking at the property. Furthermore, Blankenship appealed the NOV and an ALJ vacated it in 1981. Although the ALJ was reversed in 1983, the defendants bought the land in 1982. OSM did not cite Jewell on the NOV until 1985. It is not disputed that defendants had no actual knowledge of the reclamation problem. Under the circumstances of this case, the court also concludes that they did not have record or constructive notice.

Finally, the Secretary cites the court to a case where this court held that a subsequent purchaser must provide access to the prior mine operator to accomplish reclamation. *See United States v. Mullins,* C.A. Number 86–0106–A/B, slip op. (W.D.Va. Nov. 3, 1986) [available on WESTLAW, 1986 WL 20953]. In *Mullins,* however, the purchaser had full knowledge of the situation and acted in concert with the mine operator. This clearly distinguishes the case from the one at bar.

## CONCLUSION

For the aforementioned reasons, the court does not have jurisdiction over the plaintiffs' claim against the defendants or the Secretary's crossclaim against the defendants. Accordingly, the court grants summary judgment in favor of the defendants on these claims. Moreover, the court grants plaintiffs' motion to dismiss the Secretary's counterclaim against them for failure to state a claim upon which relief can be granted. In addition, the court *sua sponte* dismisses the plaintiffs' claim against the Secretary. The plaintiffs are ready and able to perform the reclamation that is required of them by the Settlement Agreement. For reasons beyond their control, they are unable to do so. Accordingly, no real dispute exists between the plaintiffs and the Secretary and no case or controversy exists for this court to decide. The Secretary is free to take whatever actions he deems proper to otherwise enforce the Settlement Agreement.