In the Matter of CHICAGO, MILWAU-
KEE, ST. PAUL AND PACIFIC RAIL-
ROAD COMPANY, Debtor.

No. 77 B 8999.

United States District Court,
N.D. Illinois, E.D.

Aug. 2, 1991.

Jerold S. Solovy, Daniel R. Murray, Rob-
ert L. Graham, Michael T. Brody and Diane

I. Bonina of Jenner & Block, Chicago, Ill.,
for CMC Heartland Partners.

Arthur A. Vogel, Jr., William H. Harbeck
and Roy L. Prange, Jr. of Quarles & Brady,
Milwaukee, Wis., for General Motors Corp.

Richard B. Stewart, Asst. Atty. Gen.,
Environment & Natural Resources Div.,
U.S. Dept. of Justice, Joel M. Gross, Bar-
bara A. Rogers and Thomas Giller of Envi-
ronmental Enforcement Section of U.S.
Dept. of Justice, Glen Freyer, Environmen-
tal Defense Section of U.S. Dept. of Jus-
tice, Washington, D.C., Fred Forman, U.S.
Atty., N.D. Illinois, Joel R. Nathan, Asst.
U.S. Atty. (Thomas Kenney, U.S. E.P.A.
Region V, Office of Regional Counsel and
Jon Averback, U.S. E.P.A., Office of Gen.
Counsel, of counsel), for U.S.

## MEMORANDUM AND ORDER

LINDBERG, District Judge.

On May 6, 1991, the United States,
through its Environmental Protection
Agency ("EPA") issued an order pursuant
to section 106 of the Comprehensive Envi-
ronmental Response, Compensation and Li-
ability Act ("CERCLA"), 42 U.S.C. § 9606
(1990), which required CMC Heartland
Partners ("CMC") to perform certain reme-
dial activities at the Wheeler Pit site. The
site, presently owned by CMC, is a landfill
in Wisconsin where General Motors Corpo-
ration ("GM") deposited paint sludge and
other material from 1960 to 1974. The
EPA estimates that the remedial activities
will take thirty years to complete and the
cost to exceed $2.9 million. The EPA order
became effective May 13, 1991.

On May 9, 1991, CMC filed an emergency
motion requesting the entry of an order
directing the EPA to show cause why it
should not be held in contempt of court for
failing to obey Order No. 866. Order No.
866 protects CMC from all claims and obli-
gations arising prior to or during the period
of the reorganization proceedings which
were not timely filed with the court. In its
motion, CMC further requests that this
court maintain the status quo and enjoin

the EPA from pursing its CERCLA action against CMC.

## I. *Background*

On December 19, 1977, the Chicago, Milwaukee, St. Paul & Pacific Railroad Company ("Milwaukee Road") petitioned for reorganization pursuant to section 77 of the Bankruptcy Act of 1898, formerly 11 U.S.C. § 205. The reorganization court established bar dates for the filing of claims against Milwaukee Road, the bankruptcy estate and its trustee, Richard B. Ogilvie. See 11 U.S.C. § 205(c)(7) (1976); Bankruptcy Rule 8–401(b)(1) (1979). The reorganization court ordered that all post-petition claims arising against, or obligations incurred by Milwaukee Road during the period of the reorganization proceedings had to be filed by September 10, 1985. See Order No. 832, ¶ 19.

On November 12, 1985, the reorganization court entered Order No. 866, known as the "Consummation Order." The Consummation Order, which became effective on November 25, 1985, brought the Trustee's administration of Milwaukee Road's assets to a close and vested title to those assets in the Debtor, which was re-named CMC Real Estate Corporation. Order No. 866 provided:

> All persons, firms, corporations and other entities, including without limitation the United States ... are by this Order perpetually restrained and enjoined from instituting, prosecuting, or pursuing, or attempting to institute, prosecute, or pursue, any suit, action or proceeding ("Action") against the Reorganized Company (or its successors and assigns), or against any of the assets or property of the Reorganized Company (or of its successors and assigns), directly or indirectly, by reason of or on account of any obligation by the Trustee, except the obligations imposed upon or required to be assumed by the Reorganized Company by the Plan (including those claims filed pursuant to Section 11.1 of the plan which are ultimately determined to be Allowable Claims) or this Order.

Order No. 866, ¶ 13. Order No. 866 was affirmed by the Seventh Circuit and is now final. See *In re Chicago, Milwaukee, St. Paul & Pacific Railroad*, 827 F.2d 112 (7th Cir.1987).

The Wheeler Pit site is a thirty-five acre landfill in La Prairie Township, Rock County, Wisconsin. The Janesville and Southeastern Railway Company, a predecessor in interest of Milwaukee Road, acquired the site in 1900. In 1956, Milwaukee Road leased a 3.82 acre portion of the Wheeler Pit site to GM, who used the site to dispose of wastes from its Janesville, Wisconsin manufacturing plant. From 1960 to 1974, GM dumped paint spray sludge, residue from its part hanger striping system, clarifier sludge and powerhouse coal ashes from its automobile assembly plant located in Janesville, Wisconsin. In 1974, GM covered the disposal site and discontinued its use as a waste disposal area.

It appears that as early as 1972, the EPA was aware of the potential contamination of the Wheeler Pit site. The EPA incurred response costs in 1983 by performing a Hazard Ranking System evaluation of the site. On September 21, 1984, the EPA placed the site on the National Priorities List. On December 1, 1987, CMC and GM entered into an Administrative Order on Consent with the EPA, under which they conducted a Remedial Investigation and Feasibility Study ("RI/FS") at the facility and reimbursed the EPA for its costs in overseeing the RI/FS.

In September 1990, after completion of a study of the site and the potential impact of the waste disposal, the EPA issued a Record of Decision ("ROD") selecting a final remedy for the Wheeler Pit site. The selected remedy requires the consolidation of waste and soil from adjacent property onto the original disposal area, the construction of a compacted clay cover on the site and the monitoring and evaluation of groundwater to ensure the effectiveness of the remedial action. On May 6, 1991, the EPA issued an Administrative Order finding that releases or threatened releases of hazardous substances at the Wheeler Pit site could present an imminent and sub-

stantial endangerment to public health and the environment. The order, effective May 13, 1991, required GM and CMC to implement the remedial action selected by the EPA in its Record of Decision. CMC responded by asserting that Order No. 866 discharged CMC's obligations as current owner of the Wheeler Pit site.

## II. *Discussion*

■ At issue is whether Order No. 866 prevents the EPA from enforcing its section 106 order.

CMC contends that the permanent injunction set forth in Order No. 866 precludes the EPA from asserting its CERCLA claim. CMC asserts that the claim arose during, if not prior to, the reorganization such that the claim involves pre-confirmation activities. Since the EPA did not file a claim during the reorganization proceedings, CMC contends that the claim should be discharged. CMC further asserts that even as the present owner of the Wheeler Pit facility, Order No. 866 precludes liability. CMC notes that the EPA has not identified any post-consummation activity by CMC as the present owner that has created, triggered or exacerbated the environmental conditions. Without causation, CMC argues it cannot be liable.

In support of its position, CMC cites to various cases where Order No. 866 protected CMC from liability. The most recent decision was by this court granting CMC's petition for injunctive relief and thereby enjoining the Washington State Department of Transportation ("WSDOT") from pursuing a CERCLA claim based on 42 U.S.C. § 9607(a)(2)(A).

The EPA contends that its Administrative Order is based on post-confirmation ownership of the site by CMC, and not on pre-confirmation activities of the bankruptcy debtor. The EPA claims that its Administrative Order is directed to CMC in its capacity as the present owner of a facility from which there are ongoing releases or threatened releases of hazardous substances that may present an imminent and substantial endangerment to public health or the environment. The EPA asserts that the reorganization proceedings are irrelevant to this action because its claim only involves CMC as the present owner. Order 866 therefore does not preclude the EPA from enforcing its Administrative Order.

The EPA based its Administrative Order solely on post-consummation ownership of the facility by CMC. The CERCLA action was brought under 42 U.S.C. § 9607(a)(1) which provides for liability against "the owner and operator of a vessel or a facility." The language of this section indicates that persons may be held strictly liable on the basis of present ownership alone. Cases interpreting this section also lend support to this conclusion. The Second Circuit has held:

> We agree with the State, however, that section 9607(a)(1) unequivocally imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation.

*State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2nd Cir.). The *Shore Realty* court further stated:

> Our interpretation draws further support from the legislative history. Congress specifically rejected including a causation requirement in section 9607(a).

*Id,* at 1044.

Contrary to its position, CMC is not immune from all liability as a reorganized company. Pursuant to Order No. 866, CMC is protected from suits "by reason of or on account of any obligation or obligations incurred by the Debtor or by the Trustee...." See Order No. 866 ¶ 13. Since this action rests on 9607(a)(1), the EPA holds CMC liable on its own behalf, as present owner of the Wheeler Pit site and not by means of any pre-reorganization obligation by the company.

The Supreme Court has recognized that anyone in possession of a hazardous waste site is liable for remedying the situation. In *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), liability to clean up a waste site was discharged against an individual because that individual was dispossessed of the particular property. Notwithstanding that, the Court stated:

[W]e do not question that anyone in possession of the site—whether it is Kovacs or another in the event the receivership is liquidated and the trustee abandons the property, or a vendee from the receiver or the bankruptcy trustee—must comply with the environmental laws of the State of Ohio. Plainly, that person or firm may not maintain a nuisance, pollute the waters of the State, or refuse to remove the source of such conditions.

*Id,* at 285, 105 S.Ct. at 711. The Supreme Court plainly stated that regardless of previous bankruptcy and reorganization proceedings, possession of hazardous property creates liability.

In *In re Chateaugay Corporation,* 112 B.R. 513 (S.D.N.Y.1990), the court recognized that the liability of an environmental problem did not disappear forever just because bankruptcy proceedings had occurred:

To the extent that a debtor continues to own or operate sites containing hazardous wastes, which post-petition create a danger of release or threatened release of those wastes, that post-petition ownership can be a proper basis for enforcement action notwithstanding any previous discharge in bankruptcy. Indeed, implicit in this Court's holding that claims arising out of mere ownership of sites containing hazardous wastes are not dischargeable is the necessary assumption that when those sites reach the stage where there is a release or threatened release of hazardous wastes, then at that point they may properly be subject to enforcement action.

*Id,* at 525. This court concludes that CERCLA contemplates that present ownership alone is a sufficient basis for imposing liability and, therefore, CMC may be held to this rule.

CMC sites several cases decided by this court and the Seventh Circuit that uphold the permanent injunction Order No. 866 against various claims. See *In re Chicago, Milwaukee, St. Paul & Pacific Railroad,* 878 F.2d 182 (7th Cir.1989); *In re Chicago, Milwaukee, St. Paul & Pacific Railroad,* 112 B.R. 920 (N.D.Ill.1990); *In re Chicago,* *Milwaukee St. Paul & Pacific Railroad,* No 77 B 8999 (N.D.Ill. Aug. 17, 1988). These previous decisions have no bearing on the outcome of this motion as none involved a CERCLA claim.

CMC also cites to *In re Chicago, Milwaukee, St. Paul & Pacific Railroad Company,* No. 77 B 8999, 1991 WL 66187 (April 22, 1991), which did involve a CERCLA claim. CMC contends that this decision is controlling as this court enforced Order No. 866 against WSDOT, prohibiting WSDOT from pursuing a CERCLA claim against CMC due to the State of Washington's failure to pursue the claim during the reorganization proceedings.

The WSDOT case is distinguishable, however, as CMC was not sued as the present site owner (42 U.S.C. § 9607(a)(1)) but as the site owner at the time of the 1979 copper slag spill (42 U.S.C. § 9607(a)(2)(A)). CMC sold the property in issue in 1983, approximately four years after the spill and approximately two years prior to CMC's 1985 bankruptcy reorganization. Bankruptcy Order No. 866 discharged all claims, debts and obligations against CMC arising prior to or during the reorganization proceedings, including WSDOT's CERCLA claim, which were not timely filed with the court. Order No. 866, however, does not exempt CMC from post-reorganization liability under section 9607(a)(1) of CERCLA as the present owner of the Wheeler Pit site.

Since this order is based on CMC's present status as the owner of contaminated property, the court need not reach the issues of when a CERCLA claim arises for bankruptcy purposes or whether injunctive obligations can be discharged.

ORDERED: CMC's motion for rule to show cause is denied.