**In re FV STEEL AND WIRE COMPANY,[1] Debtor.**

**No. 04–22421–SVK.**

United States Bankruptcy Court, E.D. Wisconsin.

April 27, 2005.

---

1. This case and its companion cases are being jointly administered. The other debtors and their original case numbers are:

Keystone Consolidated Industries, Inc.     04–22422

DeSoto Environmental Management, Inc.     04–22423
J.L. Prescott Company     04–22424
Sherman Wire Company     04–22425
Sherman Wire of Caldwell, Inc.     04–22426

David L. Eaton, Kirkland and Ellis LLP, Chicago, IL, for Debtor.

## MEMORANDUM OPINION AND ORDER ON UNITED STATES' MOTION FOR DECLARATION OF INAPPLICABILITY OF THE AUTOMATIC STAY

SUSAN V. KELLEY, Bankruptcy Judge.

The United States on behalf of the Environmental Protection Agency ("EPA") has requested a determination that the automatic stay does not apply to the enforcement of a Consent Decree concerning two former hazardous waste dumps in Gary, Indiana. The EPA's argument is based on the police and regulatory exception to the automatic stay. 11 U.S.C. § 362(b)(4) (2005). Sherman Wire Company (f/k/a De-

Soto, Inc.) (the "Debtor") disagrees, contending that the exception to the exception for the enforcement of a money judgment applies.

The facts are not in dispute. The Midco I site was operated as a facility for the treatment, storage and disposal of hazardous waste from 1975 to 1979. The Midco II site is about 2½ miles from the Midco I site, and was used for treatment, storage and disposal of toxic substances from 1976 to 1977. During the operation of the facilities, thousands of drums and other containers of hazardous wastes were spilled or leaked into the ground. Fires at each of the sites compounded the problems. The Midco facilities were placed on the EPA's National Priorities List in 1983 and 1986. In the early 1980's, the EPA removed surface wastes, tanks and the top one-foot of contaminated soil at Midco I and cleaned up surface wastes, contaminated soil and a sludge pit at Midco II. In June 1989, Records of Decision were issued by the EPA for Midco I and Midco II to address the "final remedial action" for the contaminated subsoil and groundwater at the sites.

On January 8, 1990, the EPA filed an amended complaint against the Debtor and some 20 other defendants in the U.S. District Court for the Northern District of Indiana, seeking to require the defendants to clean up the groundwater and contaminated subsoil at the Midco facilities and to recover CERCLA[2] response costs and civil fines. In the amended complaint, the EPA alleged that the Debtor's Chemical Coating Division had arranged for the treatment or disposal of hazardous substances at the facilities.

On January 31, 1992, the EPA filed a comprehensive Consent Decree signed by

**2.** CERCLA is the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 9601–9675, as supplemented by the Superfund Amendments and Reauthorization Act of 1986 (SARA).

the EPA, State of Indiana, Indiana Department of Transportation and numerous defendants and third party defendants. Under the Consent Decree, the settling defendants agreed to implement and perform the obligations under the "Statement of Work" which had been developed to clean up the remaining contamination at the Midco facilities. Paragraph 5 of the Consent Decree provides that the settling defendants may use a trust fund or other business entity to perform the cleanup. The major components of the cleanup as summarized in paragraph 11(b) of the Consent Decree are: (1) Initial site security, access restrictions and close out of previous investigations; (2) Handling and treatment of contaminated sediments and soils beneath the sediments; (3) Implementation of a groundwater extraction and treatment and deep underground well injection system; (4) On-site soil solidification/stabilization and soil vapor extraction; (5) Final site cover and access restrictions; (6) Long-term monitoring and maintenance; and (7) Control of air emissions, on-site storage of contaminated soil and sediments and waste handling. According to the Statement of Work, groundwater monitoring is to be conducted for 15 years after the Certification of Completion of Remedial Action, and the Consent Decree requires the settling defendants to monitor and maintain the "remedy components," including the deep well system, solidified/stabilized material and final site covers for the same 15 year period, after which they may apply to modify or terminate the monitoring or maintenance obligations for the facilities. The Consent Decree also required the settling defendants to pay certain fines, contribute to the costs of the cleanup to the EPA and State of Indiana and maintain financial security for the remediation.

The Debtor was not a party to the Consent Decree, but on or about March 31, 1992, the Debtor signed a Partial Consent Decree, whose stated purpose was to provide for the Debtor's: (1) participation in the implementation of the remediation described in the Consent Decree; (2) payment of certain response costs incurred by the EPA and State of Indiana; and (3) payment of civil fines to the EPA. The Debtor's portion of the financial obligations under the Partial Consent Decree is some 13%. The District Court approved and entered the Consent Decree and the Partial Consent Decree on June 23, 1992. The Debtor says that it has never performed any tasks related to the Midco sites other than writing checks to trust accounts.

The Debtor filed a chapter 11 petition on February 26, 2004. Although the record could be clearer, apparently the only tasks remaining under the Consent Decree are the long-term monitoring and maintenance duties for the groundwater treatment system. The EPA argues that the Debtor's obligation to operate, maintain and monitor the groundwater pump and treat system is not stayed by § 362 of the Bankruptcy Code, because the Consent Decree falls within § 362(b)(4), the police and regulatory exception to the automatic stay. That section provides that the stay does not apply to the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police and regulatory power. Specifically included in the stay exception is the enforcement of a judgment, *other than a money judgment*. The Debtor contends that enforcement of the Consent Decree against the Debtor, who never owned or operated the Midco facilities, is the enforcement of a money judgment.

The EPA relies on *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267 (3d Cir.1984), a decision which did construe the money judgment exception favorably to the government. However, the facts of that case bear little

resemblance to our case, and application of the test developed in *Penn Terra* to define "enforcement of a money judgment" actually favors the Debtor.

Penn Terra Limited was operating coal mines in western Pennsylvania, when in February 1981, Pennsylvania's Department of Environmental Resources (DER) cited the company and its president for 36 violations of Pennsylvania's environmental laws. On November 9, 1981, DER and the president entered into a consent order listing the violations and establishing a schedule for Penn Terra to take corrective measures. Penn Terra did not comply and filed a chapter 7 bankruptcy petition on March 15, 1982. Unaware of the bankruptcy, DER brought an equitable action in the Commonwealth Court of Pennsylvania, seeking a preliminary injunction requiring Penn Terra to correct the violations and comply with the consent order. The court granted the injunction. The terms of the injunction required Penn Terra to complete certain backfilling and final grading by October 15, 1982; submit updated erosion and sedimentation plans within 15 days; seal a deep mine opening within 15 days; submit a plan to DER for removal of all top strata stored over a gas line, and effectuate the plan within 15 days of approval; and complete certain top soil spreading, mulching and seeding by October 15, 1982.

Penn Terra asked the Bankruptcy Court to hold DER in contempt for violating the automatic stay. The bankruptcy court and the district court on appeal agreed with Penn Terra. The lower courts found that DER's actions were meant to enforce a money judgment, given the "obvious insolvency" of Penn Terra, with scheduled assets of only $13,500 and estimated liabilities to comply with the consent order of $660,000. *Id.* at 270. The Court of Appeals for the Third Circuit reversed, finding that the DER's actions were an exercise of the Commonwealth's police power, and that the injunction ordering Penn Terra to perform reclamation work was not an attempt to enforce a money judgment. *Id.* at 274. The court strictly construed the money judgment exception, on the grounds that the exception for government police action, which should be construed broadly, would otherwise be narrowed. *Id.* at 277.

Although the lower courts concentrated on the effect of enforcement of the injunction on Penn Terra's bankruptcy estate—a total depletion of the estate, based on the numbers—the court of appeals disagreed:

> [T]he inquiry is more properly focused on the nature of the injuries which the challenged remedy is intended to redress—including whether plaintiff seeks compensation for past damages or prevention of future harm—in order to reach the ultimate conclusion as to whether these injuries are traditionally rectified by a money judgment and its enforcement.

*Id.* at 278. The court noted that neither the form nor the substance of the injunction against Penn Terra was the type of remedy traditionally associated with a conventional money judgment. "No monies were sought by the Commonwealth as a creditor or obligee." *Id.* The court found that the mere payment of money, even if it could be estimated, could not satisfy DER's direction to complete the backfilling, update erosion plans, seal mine openings, spread topsoil and implement plans for erosion and sediment control. *Id.* The court concluded that "the suit brought by DER to compel Penn Terra to remedy environmental hazards was properly brought as an equitable action to prevent future harm, and did not constitute an action to enforce a money judgment." *Id.*

This case is distinguishable from *Penn Terra*. First, the Debtor here did not own or operate the Midco facilities, as Penn Terra operated the mines. The Debtor

transported hazardous waste to the Midco facilities, prior to their closure in the 1980's. Accordingly, the Debtor is liable under CERCLA for the cleanup of the sites for a *past* transgression; the EPA does not seek to enjoin the Debtor from sending waste to the Midco sites in the future. Moreover, even to the extent that the terms of the Consent Decree were aimed at the prevention of future harm, i.e., requiring the cleanup of the contaminated soil to prevent further pollution of the groundwater, it is undisputed that the soil cleanup was completed years, if not decades, ago. The remaining tasks under the Consent Decree are the maintenance and monitoring of the groundwater cleanup system. These tasks bear no resemblance to the litany of reclamation duties sought in the injunction against Penn Terra. The court of appeals stated that Penn Terra's liability could not be satisfied by the payment of money, even if it could be estimated. Here, the Debtor's only means of satisfying the terms of the Consent Decree is through the payment of money, which should not be difficult to estimate, calculated at 13% of the ongoing cost to monitor the groundwater testing system.

Focusing on the central issue articulated by the Third Circuit—whether plaintiff seeks compensation for past damages or prevention of future harm—can only be answered one way in this case. The Debtor's liability arose from transporting hazardous substances to the Midco facilities prior to 1986; the liability was confirmed in a judgment entered in June 1992; and the only remaining obligation is the contribution of money to a trust fund to keep the groundwater monitoring system operational. To hold that enforcement of the Debtor's remaining obligations under the Consent Decree is not the collection of a money judgment, would, in this court's opinion, eviscerate the money judgment exception. However, Congress clearly intended that actions to collect money judgments arising from the police and regulatory actions would be subject to the automatic stay.

The *Penn Terra* court quoted remarks from Rep. Don Edwards of the House Judiciary Committee during the debates on the Bankruptcy Code concerning the police and regulatory powers exception: "This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in the property of the debtor or property of the estate." *Id.* at 274 n. 6, citing 1978 U.S.Code Cong. & Ad. News at 6444–45. Although it is possible that a court faced with the Consent Decree when it was first issued in 1992 may not have construed enforcement as collection of a money judgment, when the activities needed to protect public health and safety have been completed years before the bankruptcy is filed, and the remaining requirements consist of paying money to maintain the monitoring wells and the landfill cap, this court is compelled to rule otherwise.

The EPA could not cite a single reported case in which a court construed the money judgment exception in the government's favor against a non-owner/operator such as the Debtor. That omission is significant, as it suggests that if the focus is on prevention of future harm by enforcing compliance with environmental laws, a contribution action against a potentially responsible party ("PRP") who is no longer transporting waste to the site, is covered by the exception. While a PRP could be required to perform cleanup activities at a site, once the bulk of the remediation is complete, and only monitoring remains, enforcement action against the PRP is, in effect, collection of a money judgment.

The Debtor's leading authority, *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83

L.Ed.2d 649 (1985), is not helpful. *Kovacs* concerned whether an obligation was dischargeable as a claim, not whether the money judgment exception applied. This court relies instead on the focus directed by *Penn Terra:* since the EPA in this case is seeking compensation for past damages caused by the Debtor's transportation of hazardous waste, and, because the remaining obligations under the Consent Decree involve only the payment of money to compensate the EPA for the maintenance of the monitoring system, the EPA is seeking to collect a money judgment. This collection effort is stayed by § 362 of the Bankruptcy Code, and is excepted from the § 362(b)(4) exception for enforcement of the EPA's police and regulatory powers. It is therefore,

ORDERED: The EPA's Motion for Declaration of Inapplicability of the Automatic Stay is denied.